CHRISTINE A. COLOGNE ET AL. *v.* WESTFARMS
ASSOCIATES ET AL.
(12100)
(12152)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued April 12—decision released August 6, 1985

*Victor J. Dowling,* with whom was *Victor J. Dowling, Jr.,* for the appellants (defendants).

*Martha Stone,* with whom was *Shelley Geballe,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J. This appeal involves proceedings subsequent to a March 2, 1983 trial court judgment that enjoined the defendants from prohibiting the plaintiffs access, for certain political purposes, to a privately owned shopping mall. See *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 469 A.2d 1201 (1984). The trial court, on April 22, 1983, found the defendants Victor J. Dowling, Richard W. Sheehan, and Joseph P. Vetrano in contempt for refusing to comply with its injunction and imposed a coercive order of compliance subject to certain penalties. The plaintiffs were allowed access to the mall on April 23, 1983. The defendants Dowling and Sheehan have appealed from the judgment of contempt.[1] We find error.

The following pertinent background is supported by the record. On March 2, 1983, the trial court issued its order enjoining the defendants from denying the plaintiffs limited access to the defendants' mall property for the purpose of political canvassing.[2] Id., 52–53. Both the plaintiffs and the defendants appealed from that judgment. See id.

---

[1] The defendant Joseph P. Vetrano withdrew his appeal on November 3, 1983.

[2] For a full text of this March 2, 1983 order, see *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 52–54 n.2, 469 A.2d 1201 (1984).

On March 22, 1983, the trial court considered the plaintiffs' "motion for contempt and/or motion to vacate stay." Attorney Paul Rufo, who represented the Westfarms Associates partnership and the three partners who resided outside of Connecticut, appeared at this session.[3] Rufo argued to the trial court that, under the existing version of Practice Book § 3065, the trial court's order of March 2 was automatically stayed pending the defendants' appeal of that judgment.[4] Counsel for the plaintiffs countered that, in accordance with General Statutes § 52-477, the trial court's injunctive order had not been stayed unless the trial court specifically entered a stay pursuant to an application therefor by the defendants. The trial court granted the plaintiffs' motion to vacate any stay that might have existed under Practice Book § 3065 and further found that the defendants were not entitled to any stay under General Statutes § 52-477.[5] There is no indication in

[3] The appeals of the defendants Westfarms Associates, A. Alfred Taubman, Richard Kughn, and Sidney Unobsky were withdrawn on January 17, 1985.

[4] At that time Practice Book § 3065, "[Stay of Execution] — In General," provided in part: "In all actions, except criminal actions and actions concerning child neglect brought pursuant to chapter 37, proceedings to enforce or carry out the judgment shall be stayed for twenty days; if the time in which to take an appeal is extended under Sec. 3097 such proceedings shall be stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause; and, if the case goes to judgment in the supreme court, until ten days after the decision is announced; but if the judge who tried the case is of the opinion that the extension is sought or the appeal is taken only for delay or that the due administration of justice requires him to do so, he may at any time, upon motion and hearing, order that the stay be terminated. . . ."

Effective January 1, 1985, Practice Book § 3065 was amended to eliminate conflicts with statutes that involve stays. See footnote 5, infra; cf. *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 192 Conn. 1, 7, 469 A.2d 778 (1984).

[5] General Statutes (Rev. to 1983) § 52-477 provides: "When judgment has been rendered for a permanent injunction ordering either party to perform any act, the court, upon an application similar to that mentioned in section 52-476, shall stay the operation of such injunction until a final decision in the supreme court, unless the court is of the opinion that great and

the record whether the defendants Dowling and Sheehan had received notice of the March 22 proceeding.

On March 24, 1983, the plaintiffs secured from the trial court an order to show cause why the defendants should not be found in contempt of court. Because service of this order had "not been effectuated" upon the defendants, the trial court, on March 25, declared the show cause order "a nullity." At the March 25 proceeding, the trial court orally reaffirmed its March 22 order and also cited General Statutes § 52-478 as an additional statutory ground for dissolving any stay of its March 2 judgment that might have otherwise existed. Again, the defendants Dowling and Sheehan were not directly represented at this proceeding, although counsel for the partnership and the out-of-state partners were present in court. The defendants thereafter filed with this court a motion for review of the trial court's orders of March 22 and 25.

While this motion for review was pending, a further proceeding was held by the trial court on April 12, 1983. At this proceeding, the defendant Dowling, who is an attorney, appeared on behalf of himself, Sheehan, and Vetrano; Attorneys Rufo and Robert M. Dombroff appeared on behalf of the out-of-state defendants. Although all counsel present addressed the court, the record reveals that no testimony was given under oath nor was any other evidence presented at the April 12 proceeding. The trial court, however, found that service of process had been properly made upon all the defendants and that the defendants were in contempt for failing to comply with the court's March 2 order. At that time, the trial court imposed conditional fines

irreparable injury will be done by such stay or that such application was made only for delay and not in good faith." That provision was amended in special session by Public Acts 1983, No. 83-29, § 49, to accommodate the establishment of the new Appellate Court.

that would be triggered if the defendants refused to comply with the orders and also assessed legal fees and costs payable to the plaintiffs by the defendants. From this April 12 order, the defendants filed both an appeal and a motion with this court for a stay.

The final trial court proceeding pertinent to this appeal was held on April 22, 1983. Although counsel for the defendant partnership and the out-of-state defendants was present, the individual defendants Dowling, Sheehan and Vetrano were neither present nor directly represented at this proceeding. No testimony was given under oath at this proceeding. The trial court heard representations by the plaintiffs' counsel that, subsequent to the April 12 proceeding, Dowling would not permit the plaintiffs access to the mall as required by the court's orders.[6] The court next inquired of Lynn Taborsak, then the president of the state chapter of the National Organization for Women, who was present in the courtroom but had not been administered the witness' oath or affirmation, as to the accuracy of the representations of the plaintiffs' counsel; Taborsak responded in the affirmative. No other "evidence" was presented. The counsel for the out-of-state partners then stated that his clients were amenable to complying with the trial court's orders. On that basis the trial court purged the contempt orders against those defendants. The trial court then found that service had been sufficiently made upon the other defendants, Dowling, Sheehan and Vetrano, and that they were in violation of the court's April 12 order. Dowling, Sheehan, and Vetrano were adjudged in civil contempt, and the trial court levied penalties against them, including a sixty

---

[6] The plaintiffs' counsel Martha Stone did not represent that she had directly observed the occurrences at the mall on April 16, 1983. A fair reading of the transcript shows that the plaintiffs' counsel merely related to the trial court what had been told to her by Lynn Taborsak.

day prison sentence, a $10,000 fine payable to the plaintiffs, and an assessment of other fees and costs.[7]

The plaintiffs were granted access to the mall the next day, April 23, 1983. *Cologne* v. *Westfarms Associates*, supra, 54. On April 27, 1983, we denied the defendants' motions for stays of execution of the contempt judgments, and we also granted the defendants' motion for review of the trial court's oral order of March 25, which had amended the March 22 order, but denied the relief sought in that motion. Thereafter, in *Cologne* v. *Westfarms Associates*, supra, this court held that the trial court erred in directing "that the rights of free speech and petition in our state constitution may be exercised upon private property consisting of a large regional shopping center, contrary to the wishes of its owners." Id., 50. Thus, the defendants prevailed on the merits in their appeal from the March 2 judgment ordering an injunction against them.

On appeal from the judgments of contempt, the defendants Dowling and Sheehan claim essentially that the trial court erred: (1) in that the acts for which these defendants were held in civil contempt did not and could not constitute a contempt; (2) in finding them in civil contempt without notice and without the presentation of any evidence under oath; and (3) in that it, for various reasons, lacked jurisdiction to consider the plaintiffs' motions for contempt.[8]

---

[7] The transcript indicates, however, that no mittimus was issued on April 22, 1983.

[8] The trial court, *Spada, J.*, rendered the original March 2, 1983 judgment while sitting in the Superior Court for the judicial district of Hartford-New Britain at Hartford. The subsequent proceedings described in this decision above were held in front of Judge Spada when he was sitting in the Superior Court, located in Rockville, for the judicial district of Tolland. The defendants on this appeal claim that the trial court, *Spada, J.*, sitting in Rockville erred in hearing these post trial proceedings because venue had not been transferred to that court pursuant to General Statutes § 51-347b. Judge Spada had apparently been transferred to the Superior Court in Rockville at the time the proceedings on the plaintiffs' postjudgment motions

We address first the defendants' claim that the acts for which they were held in civil contempt "did not and could not constitute a contempt." Specifically, they contend that, because the injunction upon which their contempt was based was held in *Cologne* v. *Westfarms Associates,* supra, to have been erroneously issued, the court could not hold them in contempt for failing to obey its injunctive order. We do not agree.

"The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril." *United States* v. *United Mine Workers,* 330 U.S. 258, 303, 67 S. Ct. 677, 91 L. Ed. 884 (1947). "[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." Id., 293; see also *W. R. Grace & Co.* v. *Rubber Workers,* 461 U.S. 757, 766–67, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983); *DeMartino* v. *Monroe Little League, Inc.,* 192 Conn. 271, 276–77, 471 A.2d 638 (1984). The duty to obey the injunction exists "however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case." *United States* v. *United Mine Workers,* supra, 293–94, quoting *Howat* v. *Kansas,* 258 U.S. 181, 189–90, 42 S. Ct. 277, 66 L. Ed. 550 (1922); see also *Maness* v. *Meyers,* 419 U.S. 449, 458–59, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975); Cox, "The Void Order and the Duty to Obey," 16 U. Chi. L. Rev. 86 (1948); 17 Am. Jur. 2d, Contempt §§ 43, 47. Most certainly, "this is not a case where the injunction was transparently invalid or had only a frivolous pretense to valid-

---

The defendants had not raised this issue below and in light of our disposition of this case we need not address it.

ity." *Walker* v. *Birmingham,* 388 U.S. 307, 315, 87 S. Ct. 1824, 18 L. Ed. 2d 1210, reh. denied, 389 U.S. 894, 88 S. Ct. 12, 19 L. Ed. 2d 202 (1967). We agree that "[i]t would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience." *Maggio* v. *Zeitz,* 333 U.S. 56, 69, 68 S. Ct. 401, 92 L. Ed. 476 (1948); see generally note, "Developments in the Law: Injunctions," 78 Harv. L. Rev. 994, 1077–80 (1965). Although the defendants argue that they were simply exercising "their constitutionally guaranteed rights," it must be remembered that "respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." *Walker* v. *Birmingham,* supra, 321. The defendants' claim that the subsequent reversal on appeal of the trial court's judgment entering the permanent injunction validates any action taken by them contrary to the trial court's orders is therefore without merit.

We emphasize again that the court orders must be obeyed; there is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid. Particularly is this true of attorneys. We agree with the United States Court of Appeals for the Ninth Circuit when it said: "An attorney who believes a court order is erroneous is not relieved of the duty to obey it. The proper course of action, unless and until the order is invalidated by an appellate court, is to comply and cite the order as reversible error should an adverse judgment result. *Maness* v. *Meyers,* 419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975)." *Chapman* v.

*Pacific Telephone & Telegraph Co.,* 613 F.2d 193, 197 (9th Cir. 1979); see *Barnd* v. *Tacoma,* 664 F.2d 1339, 1342 (9th Cir. 1982).

The defendants' next major claim involves the nature of the April 22, 1983 hearing during which they were found in contempt by the trial court. They claim that the trial court's finding of contempt in the absence of any sworn testimony constituted reversible error. In response, the plaintiffs argue that representations by counsel to the trial court as well as the in-court statements by Lynn Taborsak were sufficient to support the finding of contempt. In order to address this claim, we initially examine the nature of the defendants' actions that constituted the alleged contempt and the scope of the hearing that was accorded the defendants when they were found in contempt of court.

The trial court found the defendants in civil contempt for wilful violation of its injunctive orders. The alleged conduct of the defendants that the trial court found contemptuous occurred on Saturday, April 16, 1983, at the Westfarms Mall. That conduct occurred, therefore, outside of the presence of the court.

As we have often recognized, contempts may be characterized as civil or as criminal. *Board of Education* v. *Shelton Education Assn.,* 173 Conn. 81, 85, 376 A.2d 1080 (1977); *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 352–55, 321 A.2d 462 (1973); *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166 (1960); *Welch* v. *Barber,* 52 Conn. 147, 156–57 (1884); Dobbs, Remedies (1973) § 2.9; Goldfarb, The Contempt Power (1963) pp. 49–67. In the present case, the trial court characterized the alleged contempt as "civil" and the parties do not dispute that characterization. The sanctions imposed by the trial court—a sentence of imprisonment for a period of sixty days and fines in the amount of $10,000 for each separate violation of

the order—fall within the scope of possible sanctions that the court may order for civil contempt. See, e.g., *DeMartino* v. *Monroe Little League, Inc.,* supra, 278–80; *Board of Education* v. *Shelton Education Assn.,* supra.

Contempts of court may also be classified as either direct or indirect, "the test being whether the contempt is offered within or outside the presence of the court." 17 Am. Jur. 2d, Contempt § 6; see also Goldfarb, supra, 67–77.[9] A refusal to comply with an injunctive decree is an indirect contempt of court because it occurs outside the presence of the trial court. Note, 78 Harv. L. Rev., supra, 1086; see *Deming* v. *Bradstreet,* 85 Conn. 650, 658, 84 A. 116 (1912). The question then becomes how conduct, alleged to be in contempt of a court order, that occurred outside of the trial court's presence is proved to be a contempt. Established principles of both constitutional and common law, we note, are implicated in this question.

We recognize that there are constitutional safeguards that must be satisfied in indirect contempt cases. It is beyond question that "due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." *In re Oliver,* 333 U.S. 257, 275, 68 S. Ct. 499, 92 L. Ed.

---

[9] Although we have not specifically labeled in-court contempts as "direct" and out-of-court contempts as "indirect," we have recognized both the distinctions between these types of contempts and the process due the alleged contemnor on the basis of those distinctions. See, e.g., *Potter* v. *Board of Selectmen,* 174 Conn. 195, 384 A.2d 369 (1978); *Whiteside* v. *State,* 148 Conn. 77, 167 A.2d 450 (1961); *State* v. *Jackson,* 147 Conn. 167, 158 A.2d 166 (1960); *Welch* v. *Barber,* 52 Conn. 147 (1884); accord *School Committee of New Bedford* v. *Dlouhy,* 360 Mass. 109, 116–17, 271 N.E.2d 655 (1971).

682 (1948);[10] *Sodones* v. *Sodones,* 366 Mass. 121, 127, 314 N.E.2d 906 (1974); see *Harris* v. *United States,* 382 U.S. 162, 166 n.4, 86 S. Ct. 352, 15 L. Ed. 2d 240 (1965); *Cooke* v. *United States,* 267 U.S. 517, 536–37, 45 S. Ct. 390, 69 L. Ed. 767 (1925). " 'If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires . . . that the accused be accorded notice and a fair hearing . . . .' " *Johnson* v. *Mississippi,* 403 U.S. 212, 215, 91 S. Ct. 1778, 29 L. Ed. 2d 423 (1971), quoting *In re Oliver,* supra, 275–76. Due process requires, therefore, that one accused of indirect contempt be accorded a "fair hearing," and this includes the presentation of competent evidence in order to prove as a fact the occurrence of the alleged contemptuous conduct. *Fisher* v. *Marubeni Cotton Corporation,* 526 F.2d 1338, 1342 (8th Cir. 1975); see *Groppi* v. *Leslie,* 404 U.S. 496, 502–503, 92 S. Ct. 582, 30 L. Ed. 2d 632 (1972).

Further, at common law a charge of indirect contempt of court, in the absence of an admission of contempt, had to be proved by sufficient competent evidence, including testimony under oath. See *Savin, Petitioner,* 131 U.S. 267, 277, 9 S. Ct. 699, 33 L. Ed. 150 (1889); *Potter* v. *Board of Selectmen,* 174 Conn. 195, 197, 384 A.2d 369 (1978); *Masti-Kure Products Co.* v. *Appel,* 161 Conn. 108, 114, 285 A.2d 346 (1971); *Gorham* v. *New Haven,* 82 Conn. 153, 155–56, 72 A. 1012 (1909); *Church* v. *Pearne,* 75 Conn. 350, 355, 53

---

[10] The *Oliver* court further noted: "The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." *In re Oliver,* 333 U.S. 257, 275, 68 S. Ct. 499, 92 L. Ed. 682 (1948); see *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166 (1960).

A. 955 (1903); *Baldwin* v. *Miles,* 58 Conn. 496, 498, 20 A. 618 (1890); *Welch* v. *Barber,* 52 Conn. 147, 156–58 (1884); *Huntington* v. *McMahon,* 48 Conn. 174, 196 (1880). Therefore, if the conduct alleged to be contemptuous occurred outside of the court's presence, as it did in this case, the court can only act upon evidence properly taken that proves the act of contempt. 17 C.J.S., Contempt § 84 (4) and cases cited therein; 17 Am. Jur. 2d, supra, §§ 83, 88, 95 through 99; Dobbs, supra, § 2.9. As we have stated: "Where the alleged contempt does not occur in the presence of the court and is thus defined and punishable under the common law, 'process is required to bring the party into court, and the acts or omissions constituting the offense are to be proved as in ordinary cases.' *Huntington* v. *McMahon,* [supra], 196. Under the circumstances alleged in the present case, the court could not on its own motion, upon facts within its own knowledge, render judgment against the defendant; the evidence necessary to constitute the alleged contempt must have been established by sufficient proof in the trial court. *Baldwin* v. *Miles,* [supra], 498; *Welch* v. *Barber,* supra." *Potter* v. *Board of Selectmen,* supra, 197.[11] Under our rules of practice, moreover, a witness must be administered the oath or affirmation prior to testifying. Practice Book § 286.[12]

---

[11] We note that in the federal system the burden of proof in civil contempt cases is the "clear and convincing evidence" standard. See *Oriel* v. *Russell,* 278 U.S. 358, 362, 49 S. Ct. 173, 73 L. Ed. 419 (1928); *In re Irving,* 600 F.2d 1027, 1037 (2d Cir.), cert. denied, 444 U.S. 866, 100 S. Ct. 137, 62 L. Ed. 2d 89 (1979); Goldfarb, Contempt Power (1963) p. 251; see generally note, "Procedures for Trying Contempt in the Federal Courts," 73 Harv. L. Rev. 353 (1959).

[12] "[Practice Book] Sec. 286. ADMINISTERING OATH.

"The oath or affirmation shall be administered by the court, the clerk or a clerical or administrative assistant if so authorized by the chief clerk, deliberately and with due solemnity, to each witness as he takes the stand. The reporter shall note by whom it was administered and furnish a certified list of the witnesses sworn each day to the clerk, who shall record the same." See General Statutes § 1-25.

In *Welch* v. *Barber,* 52 Conn. 147, 158 (1884), this court disapproved the admission into evidence of affidavits for the purpose of establishing contu-

"From ancient times it has ever been held essential that witnesses in court proceedings swear or affirm before giving evidence. *Curtiss* v. *Strong,* 4 Day 51, 56 [1809]; *State* v. *Dudicoff,* 109 Conn. 711, 716, [145 A. 655 (1929)]." *State* v. *Salafia,* 29 Conn. Sup. 305, 310, 284 A.2d 576 (1971). In light of these settled principles of law, we survey the evidentiary basis upon which the trial court found these defendants in contempt of court.

At the April 22 hearing, the plaintiffs' counsel represented by her statements to the trial court that the defendants, specifically the defendant Dowling, would not allow the plaintiffs to enter the mall on the previous Saturday for the purpose of conducting activities within the scope of the March 2 order. Counsel for the plaintiffs stated that "[a]t that time, Mr. Dowling met them and informed them that they would not be allowed in last Saturday and would not be allowed in any Saturday until the Connecticut Supreme Court ruled." This "testimony" was not given under oath and was hence not subject to any cross-examination.[13] Moreover, the record is barren of any indication that the plaintiffs' counsel herself had directly observed the conduct of the defendant that was purported to constitute contempt. As such, the counsel's representations did not constitute competent evidence upon which a finding of contempt could have been based. These representations of the plaintiffs' counsel are not "evidence" and certainly not "proof." See *Celentano* v. *Zoning Board of Appeals,* 135 Conn. 16, 18, 60 A.2d 510 (1948). Fairly stated, evidence legally is the means by which alleged

macious conduct. See 17 Am. Jur. 2d, Contempt § 97; cf. annot., 41 A.L.R.2d 1263; annot., 2 A.L.R. 225.

[13] That the defendants were not present at the April 22 proceeding does not alter this analysis. Had they been present or had they been represented by counsel, it is unlikely that the plaintiffs' counsel would have been subject to cross-examination, a right that this court has recognized, at least since *Welch* v. *Barber,* 52 Conn. 147 (1884), is available to one accused of indirect contempt.

matters of fact are properly submitted to the trier of fact for the purpose of proving a fact in issue. On the other hand, "proof" is the result or the effect of such "evidence." Moreover, these representations were not "testimony," which, in turn, when given under oath or stipulated to, is a species of "evidence." It is well settled that representations of counsel are not, legally speaking, "evidence." See, e.g., *Curtis* v. *Rives,* 123 F.2d 936, 941 (D.C. Cir. 1941); *Dunn* v. *Stewart,* 235 F. Sup. 955, 964 (S.D. Miss. 1964); *Celentano* v. *Zoning Board of Appeals,* supra; *American National Bank & Trust Co.* v. *Long,* 281 Ala. 654, 656, 207 So. 2d 129 (1968); *Sloan* v. *Sloan,* 393 So. 2d 642, 644 (Fla. App. 1981); *Davis* v. *Independence,* 404 S.W.2d 718, 720 (Mo. 1966); *Wilson* v. *Motors Ins. Corporation,* 349 S.W.2d 250, 254 (Mo. App. 1961) (statements of unsworn attorney do "not prove themselves or constitute evidence"); *O'Hearn* v. *O'Hearn,* 55 App. Div. 2d 766, 767, 389 N.Y.S.2d 651 (1976). We note that, had the trial court relied entirely upon unsworn statements of the plaintiffs' counsel at the April 22 proceeding, the due process rights guaranteed the defendants as enunciated by the United States Supreme Court in *In re Oliver,* supra, may well have been violated. See *Sodones* v. *Sodones,* supra.

At the April 22 proceeding, after the plaintiffs' counsel made her unsworn statements about the incident in question, the trial court made the following inquiry:

"The Court: Was the President of NOW, Lynn Taborsak, with them?

"Ms. Stone: Yes, Your Honor. She was there, and she's in Court.

"The Court: Is Lynn Taborsak in Court?

"Ms. Stone: Yes, Your Honor, she's in Court today.

"The Court: Miss Taborsak, would you rise?" The record indicates that Lynn Taborsak then stood up in court, but that no oath or affirmation was administered to her as required pursuant to Practice Book § 286. The following colloquy then occurred:

"The Court: Have you heard the representations made by Attorney Stowe—Stone relative to what resulted at the Westfarms Mall on Saturday last, April 16th, whereby you were denied access by Victor Dowling?

"Ms. Taborsak: Yes, I have.

"The Court: Is that a correct statement?

"Ms. Taborsak: Yes, it is.

"The Court: All right. Thank you, Miss Taborsak. Were you advised, Miss Taborsak, by Mr. Dowling that you would be denied access also on Saturday, April 23?

"Ms. Taborsak: Is that this Saturday?

"The Court: Yes.

"Ms. Taborsak: Yes, I was."

Although the record reveals that Lynn Taborsak as a "witness" had direct knowledge of the incident, we cannot countenance a finding of contempt based upon unsworn "testimony."

In sum, we are compelled to affirm the established principle of law that a finding of indirect civil contempt must be established by "sufficient proof" that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure "as in ordinary cases." *Potter* v. *Board of Selectmen,* supra, 197, quoting *Huntington* v. *McMahon,* supra, 196.[14] This rule must be given full effect especially

---

[14] Under the circumstances of this case where the alleged contempt did not occur in the presence of the court, it was necessary for the plaintiffs

when, as in this case, the defendants are subject to substantial fines and to a possible loss of liberty. "We cannot uphold an adjudication of contempt in the total absence of evidence upon which such a finding could be based." *Commonwealth* v. *Kreplick,* 379 Mass. 494, 497, 399 N.E.2d 9 (1980).

The actual predicate necessary for finding the defendants in contempt was not established; the trial court's traditional and required factfinding function in that regard was not fulfilled. These are not mere technical matters. It is clearly necessary to base a finding of contempt on competent evidence. Due process "implies the right not to be deprived of one's property or liberty without evidence having been offered against him in accordance with the established rules . . . . " *Collins* v. *Superior Court,* 145 Cal. App. 2d 588, 594, 302 P.2d 805 (1956); see *Ransom* v. *Superior Court,* 262 Cal. App. 2d 271, 275, 68 Cal. Rptr. 507 (1968). Full constitutional protections were not afforded these defendants. " 'Certainly the history of contempt litigation . . . prescribes extreme care and insistance on the full indicia of due process in contempt cases . . . .' " (Citations omitted.) *Fisher* v. *Marubeni Cotton Corporation,* supra, 1342. In this case, a proper proceeding for determining the existence of a contempt must be conducted within the framework of substantive and procedural rules prescribed by law for the circumstances and the parties. "The law of the land" requires this. See *In re Oliver,* supra, 278. This was not done. In light of what we have said on this vital issue, the trial court's determination of contempt constitutes error cognizable under our rules of practice. Practice Book § 3063; see, e.g., *Batick* v. *Seymour,* 186

---

to establish it "by sufficient proof." *Potter* v. *Board of Selectmen,* 174 Conn. 195, 197, 384 A.2d 369 (1978). This threshold burden is quite different from the circumstance where inability to comply is claimed by a defendant when the burden of proving such inability lies with the delinquent party. See *Leslie* v. *Leslie,* 174 Conn. 399, 403, 389 A.2d 747 (1978).

Conn. 632, 640–41, 443 A.2d 471 (1982); *State* v. *Burke,* 182 Conn. 330, 331–32, 438 A.2d 93 (1980).[15] Accordingly, the finding of these defendants in contempt cannot stand because it was based upon "testimony" that was given contrary to our rules of practice and very probably in violation of constitutional principles guaranteeing fundamental fairness.

We further note that the plaintiffs were allowed access to the mall on April 23, the day following the proceeding during which these defendants were found in contempt until the direct appeal was decided. *Cologne* v. *Westfarms Associates,* supra, 54. "To effectuate the purpose of civil contempt, the contemnor should be able to obtain release from the sanction imposed by the court by compliance with the judicial decree. *United States* v. *United Mine Workers,* supra, 331–32; *McTigue* v. *New London Education Assn.,* supra, 353; *Rogers Mfg. Co.* v. *Rogers,* [38 Conn. 121,] 123 (1871)." *Connolly* v. *Connolly,* 191 Conn. 468, 482–83, 464 A.2d 837 (1983). Because these defendants have complied with the March 2 order from the period beginning April 23, 1983, through the date that our decision in the direct appeal was announced, the ultimate purpose of finding them in civil contempt has been satisfied, and, therefore, we need not direct any further proceedings in this matter under such circumstances.

There is error, the judgment finding the defendants Sheehan and Dowling in contempt is set aside and the matter is remanded with direction to dismiss the order to show cause.

In this opinion the other judges concurred.

---

[15] We need not, therefore, address any other claims raised by the defendants.