[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Carol Chmiel, commenced this action seeking a dissolution of the marriage, alimony, and other relief. The defendant husband, Joseph Chmiel, filed no answer or cross-complaint. Both parties appeared by counsel, filed claims for relief, made oral argument and filed briefs. CT Page 10067
At the trial, both parties testified and offered into evidence numerous documentary exhibits. Both parties filed financial affidavits. From the evidence, the court finds the following facts.
The wife, whose maiden name was Carol Kearney, married the husband on November 25, 1967, in Hebron, Connecticut. She has resided continuously in this state for at least one year before the filing of her complaint, which was April 10, 1992. There are no minor children issue of the marriage and only one minor child was born to the wife since the date of the marriage, Alison, who was born September 4, 1969. Neither of the parties are recipients of public assistance, all statutory stays have expired and this court has jurisdiction.
The wife is 44 years of age, a high school graduate with one year of college, and is in good health. She has been working as a premium accounting clerk for her present employer for approximately five years. She handles billings, premium disbursements, and general bookkeeping and accounting-type duties. During the marriage, aside from the time shortly before and after the birth of the parties' only child, she has worked full-time as a clerk and/or bookkeeper with the exception of a short stint as a waitress.
The husband is 45 years old, dropped out of high school after the tenth grade, and had a triple heart bypass operation in 1989. He has been seen regularly by a psychiatrist for a number of years and is now on daily medication for his blood pressure and mental depression. He has worked all of his career as a truck driver, some of that time for a carrier, doing long distance hauls delivering freight, and more recently in the construction trades.
The parties married when the wife was 18 and the husband 19. He was drafted into the Army in early 1968 and served in Vietnam for about one year during all of 1969. He was discharged in early 1970, about four months after Alison was born. He came home a different man. He acquired a drug problem (marijuana) which he kicked after six years of sustained use. He also acquired an alcohol problem, and is now an alcoholic. He was able to stay sober for about one year after his heart operation, but currently drinks about five six-packs of beer a week. His drinking does not appear to interfere with or impair CT Page 10068 his ability to function at his job.
He has also suffered from bouts of depression. The parties argued often about methods of parenting and discipline for their child. The husband was also belligerent when drinking, most of which he did at home in the evenings and on weekends, and had a sexual relationship in the early 1980s with another woman which lasted six months.[1] There was always tension and lack of communication. The husband candidly conceded that the wife did a `good job' raising their daughter who is now a `wonderful kid'. He accepts the major share of the responsibility for the breakdown of the parties' marriage. The parties had little or no counseling during the marriage for their marital dysfunction, although the husband saw a psychiatrist. He refused to attend Alcoholics Anonymous. The parties made little effort to attempt reconciliation of their marriage of over 25 years. On the state of the evidence, the court concludes that the major share of the responsibility for the irretrievable breakdown of the parties' marriage must be borne by the husband, and the court does find, despite the husband's claim in testimony and through his counsel `that he does not want this divorce', that the parties' marriage has broken down irretrievably with no reasonable prospect of reconciliation.
The wife commenced this action by a complaint filed on April 10, 1992, however, the parties remained under the same roof sharing expenses until July 1993, when the wife moved out. Her move arose from a series of events, all of which are unnecessary to relate here, but was finally triggered by the husband's destruction of most of her clothing. The parties have been separated since.
The major asset acquired during the parties' marriage is the dwelling and land at 218 West Road, Salem, Connecticut, which is jointly owned by them. The husband's mother sold them a lot worth about $6,000 for the sum of $2,000, in effect, giving them a $4,000 gift. The husband acted as a general contractor, took three months off from his job and by dint of his labor and that of subcontractors, the house was completed by January 1980. The wife also worked on the house evenings and weekends. They funded its construction with a $3,000 gift from the wife's parents, $12,000 in joint savings and a construction mortgage, which was refinanced in December, 1992 to obtain a lower interest rate. CT Page 10069
The parties submitted appraisal reports with respect to the value of the premises, and the husband testified that it needs repairs, such as work on the deck, driveway, heating system (the house has been heated with a woodstove) and drainage. From all of the evidence, the court finds the value of the dwelling and land to be $112,000, subject to a present mortgage balance of $38,000, leaving an equity of $74,000. The other assets of the parties are husband's vehicles[2] and personal property set out in his affidavit valued at $3,050, a Chelsea-Groton bank account of $4,000 and his union pension, which is fully vested and would provide $1,138 per month to him at age 64 or $308 per month at age 52, even if he left union employment today. The court heard no credible evidence and cannot accept the post-trial assertions made in the wife's brief as to the present value of the pension, but in the light of the court's orders later set forth, the present value of the pension would not affect the outcome of this case.
The wife shows assets of about $2,000[3] on deposit in banks and a 401K plan worth $6,200 against which she has a loan of $3,000 leaving a net of $3,200.
Against these assets, the parties show a joint obligation to the husband's mother in the amount of $20,000, which was borrowed by them over the years for family needs. The wife also shows a Visa bill of $4,000, most of which was incurred to replace the clothing destroyed by the husband, her car loan of $7,000, the loan against her 401K plan of $3,000 and $2,000 due as attorney's fees.
An examination of the joint federal income tax returns and earnings records provided by the parties reveals that the wife presently earns almost $19,000 gross per annum, which breaks down to $363.77 per week gross, $289.87 per week net. She currently claims a net shortfall of about $228 per week, which the court finds to be overstated, as a result of about $80 per week in expenses claimed on her financial statement which are either not in fact actually incurred or higher than actually spent. The husband's income over the past seven years has fluctuated, in part due to strikes, and in part due to seasonal unemployment, which regularly prevails in the construction trades. However, with strike benefits, unemployment compensation and overtime included, he has averaged about $25,000 per annum gross over the years 1990, 1991 and 1992. He CT Page 10070 has worked overtime in 1993, while employed by Manifort Construction Co., and his average gross weekly income for the period May 22, 1993 to October 21, 1993 was about $707 per week; his net income was $519 per week, after mandatory deductions. During this latter period, he lost no time from work due to illness.
The wife was the primary caretaker of the child, and during this twenty-five year marriage, in addition to her out-of-home, full-time employment, she was also the primary homemaker, doing the cooking, shopping, cleaning, laundry and the like. The husband also did chores around the home, including lawn maintenance, cutting and splitting wood, repairs and the like, and the court has considered the non-monetary contributions of each of the parties to their marriage. See O'Neill v. O'Neill, 13 Conn. App. 300, cert. denied, 207 Conn. 806
(1988). The court finds that although the husband had higher earnings than the wife and made greater monetary contributions to the marriage, the wife made greater nonmonetary contributions, and hence, their overall contributions, monetary and non-monetary, essentially were in balance.
Despite the husband's physical and mental health problems, and his drinking, the court finds that his earning capacity, and present earnings and sources of income are superior than those of the wife, at least for the foreseeable future. This is so despite the fact that the wife has been receiving incremental annual raises from her present employer, Diversified Group Brokerage, and has applied for other higher paying employment.
He also has a safety net in the form of his pension, while the wife has a contributory, 401K plan worth only $3,200.
The wife, in her post-trial brief, has stated that she hereby waives all claims for alimony, whether lump sum or installment payments, due to her fear of retaliation by the husband. (Emphasis in original.) Despite the seemingly unequivocal nature of this purported waiver, the court concludes that this waiver is inextricably tied to her suggestion that she be awarded sixty (60%) percent of the marital assets, or $69,535, after certain credits and debits including an assignment of an additional $20,000 in lieu of alimony. In her computation of the total `marital' assets, the wife has omitted the Dalkon shield settlement, and in any event, asserts that her CT Page 10071 use of the settlement funds was more than balanced out by the husband's use of strike benefit funds for his own purposes.
The court, however, on the facts of this case, declines the wife's waiver of alimony for several reasons. "An award of alimony is based primarily on a spouse's continuing duty to support." Hotkowski v. Hotkowski, 165 Conn. 167, 170
(1973). General Statutes 46b-82 governs alimony awards and specifically provides that alimony may be in addition to an assignment of property award made under 46b-81. Also, the court when determining to award alimony, is required by 46b-82
to consider the needs of each spouse. Here, the wife clearly has a shortfall of about $148 per week, which will not be met even if she forgoes her 401K deduction.
The suggestion made by the wife would almost inevitably force the husband to sell the parties' home immediately, and expose the parties to a substantial capital gain tax liability, which the wife's proposal also seeks the husband to entirely bear. Although the court is aware that such tax liability may be deferred under certain circumstances, the court does not view a forced sale as realistic in the current market. Even if a price somewhere within reach of the parties' valuations is obtained from such a sale, after payment of closing costs, the first mortgage, and the like, the husband would end up with no net proceeds, if he had to make a lump sum payment to the wife along the lines suggested. Moreover, he would be still burdened by capital gain tax liability and the debt to his mother, leaving him very little incentive to expedite the sale of a house he exerted so much personal effort to build. Finally, the court discounts the wife's fear of retaliation, as the court can discern no significant difference between an order to pay periodic alimony and an order to sell the family home. Indeed, it would seem that under these circumstances, the husband might be even more overwrought and upset about an order to sell the house than an order to make modest weekly alimony payments which he can afford to pay.
In any event, the court assumes that the husband will obey its orders.
"The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and wilfully refuses his CT Page 10072 obedience, does so at his peril." Cologne v. Westfarms Associates, 197 Conn. 141, 147-148 (1985).
The court has considered all of the factors in General Statutes 46b-62, 46b-81 and 46b-82 in the light of the findings and evidence, and enters the following orders:
A decree of dissolution of the marriage is granted on the ground of irretrievable breakdown.
The husband shall pay to the wife, as periodic alimony, the sum of $50 per week, which shall be taxable to the wife and deductible to the husband for federal and state income tax purposes. Said periodic alimony shall terminate upon the death of either party, the wife's remarriage, or the husband's retirement at age 64 or thereafter, and shall be secured by immediate wage execution.
The husband shall irrevocably designate and maintain the wife as beneficiary of his job-related life insurance policy in the amount of $20,000 so long as he is obligated to pay alimony hereunder and he shall execute and deliver to her an authorization directed to the life insurance company so that the wife may deal directly with it to determine whether the policy is in full force and effect, and to obtain notices respecting its good standing.
The husband shall transfer to the wife by Qualified Domestic Relations Order (QDRO) fifty (50%) percent of his present interest in his New England Teamsters Trucking Pension Fund. The court shall retain jurisdiction to modify this portion of the judgment to ensure compliance with federal and/or state law relating to retirement/pension benefits.
The wife shall convey, by quit claim deed, to husband all of her right, title and interest in and to the jointly-owned premises at 218 West Road, Salem, Connecticut subject to the first mortgage and taxes thereon, which the husband shall pay and save the wife harmless therefrom. Simultaneously, the husband shall execute and deliver to the wife a promissory note, payable to her, secured by second mortgage on said premises. Said note shall be in the amount of $38,000, and bear interest at the rate of five (5%) percent per annum with equal monthly payments of $222.15, with the first monthly payment due December 15, 1993. Said note shall also provide for a thirty-day default CT Page 10073 clause, provisions for attorney's fees and an increase in the interest rate to seven (7%) percent on the unpaid balance while in default, and a requirement that the maker shall maintain homeowner's insurance on the premises and name the payee second mortgagee thereon; and said note shall become due and payable on the first to occur on the following: sale of the premises, death or remarriage of the husband, his cohabitation with an unrelated female or his ceasing to reside in the mortgaged premises as his principal residence or December 1, 1998. In the event said quit claim deed, mortgage deed and note are not executed and delivered within thirty days from the date of this decree, then title to the premises shall vest in the husband, and the wife's interest in the premises shall be secured by a judgment lien embracing the above terms and conditions.
Each party shall take, have and own the bank accounts, motor vehicles and other personal property in their respective possession. The parties shall cooperate in executing any documents of title necessary or incidental in order to effect this provision.
Wife shall take, have and own her 401K plan. Each shall pay the obligations shown on their respective financial affidavits and save the other harmless therefrom. The husband shall specifically be solely responsible for the obligation to his mother in the amount of $20,000 which both parties conceded was owed, and save the wife harmless therefrom.
The assignment of property interests above ordered has taken into account and considered the gifts by parents on each side and the husband's destruction of the wife's clothing, the wife's use of part of the Dalkon shield settlement funds and the husband's use of certain strike benefits.
The husband shall pay toward wife's attorney's fees the sum of $1,000 within thirty days, as the court finds that a denial of her claim for attorney's fees in toto would undermine the other financial orders entered.
The wife's birth name may be restored, so she shall henceforth be called Carol Kearney.
Teller, J.