TOWN OF NEW HARTFORD ET AL. *v.* CONNECTICUT
RESOURCES RECOVERY AUTHORITY ET AL.
(SC 17879)

Rogers, C. J. and DiPentima, McLachlan, Gruendel and Robinson, Js.*

Argued October 16, 2008—officially released May 19, 2009

* The listing of justices reflects their status on this court as of the date of oral argument.

*Louis R. Pepe*, with whom were *Richard F. Wareing, Richard H. Goldstein, Daniel J. Klau* and *Joseph J. Chambers*, for the appellant (named defendant).

*David S. Golub*, with whom were *Jonathan M. Levine, Joseph V. Meaney, Jr.*, and, on the brief, *Marilyn J. Ramos* and *Craig N. Yankwitt*, for the appellees (plaintiffs).

*Opinion*

McLACHLAN, J. This appeal[1] stems from a certified class action brought by the plaintiffs, a group of seventy municipalities,[2] against the named defendant, Connecticut Resources Recovery Authority,[3] following its ill-fated loan of $220 million to Enron Power Marketing, Inc., a subsidiary of Enron Corporation (collectively Enron).[4] The principal issue in this appeal is whether

---

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The trial court certified the case as a class action on behalf of the named plaintiff, the town of New Hartford, and sixty-nine similarly situated municipalities, which comprise the entire membership of the Mid-Connecticut Project. Hereinafter, we refer to the class members collectively as the plaintiffs.

[3] The underlying action included claims against additional defendants, all of which were withdrawn or dismissed prior to trial. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 436 n.1, 970 A.2d 592 (2009). We refer to Connecticut Resources Recovery Authority alone as the defendant.

[4] This appeal arises out of the same litigation as *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 970 A.2d 592 (2009), *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 970 A.2d 578 (2009), and *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 970 A.2d 583 (2009), which were released on the same date as this opinion. For a complete description of the underlying litigation and parties, see *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 433.

the trial court violated the defendant's right to due process[5] when it found the defendant in civil contempt of its November 20, 2006 order restricting the defendant's communications with the plaintiffs. The defendant claims that the trial court violated its due process right to fair and adequate notice sufficient to afford it a meaningful opportunity to prepare a defense. We agree with the defendant and, accordingly, reverse the judgment of the trial court.[6]

Additionally, the defendant claims that a second gag order imposed by the court on February 9, 2007, following the finding of contempt, was unjustified and unconstitutional. Specifically, the defendant argues that the trial court: (1) abused the discretion afforded by Practice Book § 9-10[7] when it entered the gag order; (2) violated the defendant's first amendment rights by imposing an overly broad gag order; and (3) irreparably harmed the defendant by preventing it from complying with its statutory disclosure obligations. See General Statutes § 22a-263. The record, however, shows that the trial court entered the gag order as a sanction for the

[5] Although the defendant refers to its due process rights under the federal and state constitutions, it has not provided a separate analysis of this claim under the state constitution or asserted, as relevant to this claim or otherwise, that the state constitution affords it greater constitutional safeguards than its federal counterpart. Consequently, we will confine our review to the rights afforded by the federal constitution. See generally *State* v. *Ortiz*, 280 Conn. 686, 689 n.2, 911 A.2d 1055 (2006); *State* v. *Nash*, 278 Conn. 620, 623–24 n.4, 899 A.2d 1 (2006).

[6] The defendant also argues that the court improperly found that it had violated the terms of the November 20, 2006 order by employing an overly broad understanding of that order and held the defendant in contempt without first making a finding of wilful violation. Because we reverse the judgment of contempt on due process grounds, we decline to address these arguments.

[7] Practice Book § 9-10 provides in relevant part: "The judicial authority at any stage of an action under this section may require such security and impose such terms as shall fairly and adequately protect the interests of the class in whose behalf the action is brought or defended. . . ."

contempt finding.[8] Because our reversal of the judgment of contempt necessarily vacates the associated sanction, it is unnecessary to address this claim.[9]

The record reveals the following facts and procedural history. During the course of this litigation, the plaintiffs filed a motion for relief for improper communications, alleging that a member of the defendant's board of directors (board) had sent to the plaintiffs, via a November 15, 2006 letter and a November 16, 2006 e-mail, misleading information suggesting that the plaintiffs "ha[d] the power to bring this suit to a halt and avert this situation." The plaintiffs' motion requested, inter alia, that the court restrain the defendant and its officers and directors from further communication, without approval of the court, with the plaintiffs regarding the litigation. On November 20, 2006, the court ordered that "[the defendant] and its officers and directors shall desist from any further communications with [the plaintiffs] regarding this lawsuit except upon prior approval of the court." Upon request, the court clarified that it was "trying to tailor the relief as narrowly as possible" and if the parties "have to conduct other business, that's between them, but nothing is to be mentioned or said about this [litigation]." The defendant did not appeal from the court's November 20, 2006 order.

A court trial was held between November, 2006, and January, 2007. On February 1, 2007, prior to the court

[8] The court issued the gag order and the contempt finding contemporaneously, after a hearing at which the defendant was found in contempt of a prior gag order. The court never mentioned Practice Book § 9-10 as the source of its authority. In addition, when the court addressed the defendant's subsequent motion to stay the gag order on March 22, 2007, it clarified that the gag order was imposed as a sanction for the contempt finding.

[9] The defendant asks only that we vacate the gag order and does not suggest that any further remedy is warranted. In light of the defendant's limited request and the absence of any indication that the gag order affected the result of the trial, which already had concluded when the order was imposed, we need not address the claim that the gag order was unjustified and unconstitutional.

rendering judgment, the defendant posted on its website a statement entitled "UPDATE ON NEW HARTFORD *v.* [CONNECTICUT RESOURCES RECOVERY AUTHORITY]—FEBRUARY 1, 2007," which included a discussion of the three year lawsuit, and statements such as "[t]he suit was originally filed because the [named plaintiff] didn't like the fact that [the defendant] had to raise disposal fees after the Enron bankruptcy," and "[t]his lawsuit boils down to the conflict between prudence and recklessness . . . . It's hard to imagine that the couple of first selectmen who are driving this case would run their towns as recklessly as they want us to run [the defendant]." The website posting also included and contested three "claims" that it attributed to the plaintiffs' attorney.[10] The plaintiffs filed a motion for contempt on February 8, 2007, which the defendant's attorneys did not receive until nearly 5 p.m. The motion for contempt alleged that the defendant's website posting was an improper attempt to contact the plaintiffs in violation of the November 20, 2006 order and that Paul Nonnenmacher, the defendant's director of public affairs, had admitted as much in an e-mail to a representative of the named plaintiff.[11]

When the parties appeared before the court on February 9, 2007, less than one day after the defendant had received the motion, for a previously scheduled hearing,[12] the court indicated that it recently had received

[10] The plaintiffs argue that the three claims were taken from a report issued to the plaintiffs by a class action advisory committee and falsely were attributed to the plaintiffs' attorney on the defendant's website.

[11] The motion for contempt was accompanied by four exhibits: (1) a transcript of the court's November 20, 2006 order; (2) the class action advisory committee report and a letter from the plaintiffs' attorney to the defendant's attorney regarding the prejudgment remedy; (3) the February 1, 2007 website posting; and (4) the e-mail from Nonnenmacher to a representative of the named plaintiff.

[12] The hearing was scheduled to determine whether the defendant could distribute certain moneys to the plaintiffs before the court rendered judgment. The court also dealt with a motion for prejudgment remedy filed by the plaintiffs. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 970 A.2d 578 (2009).

the plaintiffs' motion for contempt. Counsel for the plaintiffs stated that the defendant's attorney "indicated that he needs time to respond to [the motion for contempt]. We wanted to get that in front of the court, but we don't object to scheduling that for a hearing at a subsequent date if the court wishes to do that." The court responded that it was "concerned about what's transpired, so the court wishes to address that." After discussing other issues, including another allegedly improper communication sent to the plaintiffs by the defendant around January 26, 2007,[13] the court indicated that it wanted to address the motion for contempt. When the court asked defense counsel about the website posting, he responded: "Your Honor, we didn't get these papers until almost 5 o'clock last night, and it's just not fair to have any hearing on that. We haven't had a chance to talk to . . . Nonnenmacher [the author of the communications at issue] . . . [Thomas] Kirk [the defendant's president] or anybody else about [anything] raised in the motion for contempt. We saw this issue for the first time last night at almost 5 [p.m.]." Defense counsel admitted that the plaintiffs' counsel

---

[13] The letter, which also was a press release, is dated January 25, 2007, and outlines a proposed plan of distribution to the plaintiffs of certain settlement funds and indicates that the funds would be distributed. The plaintiffs, however, were seeking to attach those funds and the defendant had agreed that it would give prior notification to the court of any planned distribution of the funds so that the plaintiffs would have an opportunity to object. The letter was introduced as a court exhibit for identification without objection. Defense counsel accepted the unsworn representations of a representative of the city of Hartford, one of the plaintiffs, that the letter had been sent by facsimile to the city's chief operating officer. Normally we would find the court's reliance on unsworn testimony in determining contempt improper, but we will not do so when, as in the present case, the attorney of the alleged contemnor induces the error by encouraging the court not to swear in a witness. Cf. *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 152–54, 496 A.2d 476 (1985); id., 155 ("we cannot countenance a finding of contempt based upon unsworn 'testimony' "); *Kelly* v. *Kelly*, 54 Conn. App. 50, 60, 732 A.2d 808 (1999) ("a judgment of contempt cannot be based on representations of counsel in a motion, but must be supported by evidence produced in court at a proper proceeding" [internal quotation marks omitted]).

had brought the website posting to his attention earlier in the week, but stated that he was unaware that it would be viewed as a contemptuous act until he received the motion for contempt and that he had not had a chance to read the entire website posting. Defense counsel stated that "frankly, I was busy last night getting ready for this hearing [on other matters], and I still haven't read all three pages of this, and it's just unfair to go forward on a motion for contempt."

The court responded: "Well, isn't it unfair to the court when the court has entered an order that there be no communication between the parties regarding the lawsuit to have something posted on the website that goes point by point regarding the very lawsuit? . . . [I]t's pretty obvious to the court that it's a blatant violation of the court order." At that point, the attorneys and the court discussed the merits of the motion for contempt. During that discussion, defense counsel stated that the website posting was "a mistake in my view. I'd like to have a chance to look at it and talk to . . . [Nonnenmacher] about why he did this." The court did not respond directly to defense counsel's request. The court stated that the website posting "talks about the trial. It talks about the witnesses testifying. It contradicts testimony. . . . What if we had a jury case on this and some jurors saw it? We'd probably have to start all over again."[14] Defense counsel stated that both parties had been contacted by the press, and the court replied that it was "going to take care of that today." The court stated: "The court finds that certainly the website posting is in direct contravention of the [November 20, 2006] court order. The [January 26, 2007] letter is right on

[14] A printout of the website posting, which was attached to the motion for contempt, also was marked as a court exhibit for identification at the February 9, 2007 hearing.

the edge.[15] It is also in violation of the court order. So the court finds [the defendant] in contempt of the prior court order. The court is going to order that the posting on the website be removed immediately, and if not removed, the court will impose a fine of $5000 per day for every day it is on the website. The court is further going to order that . . . from this day forward there is a gag order as to all parties in this case. There is to be no discussion of anything remotely relating to payments to the [plaintiffs], the lawsuit, anything that could be conceived other than between counsel and their clients in private, which is not to be released to the press or any other entity, only within attorney-client privilege."[16]

After further discussion on other matters, the court stated: "Just to be clear on the motion for contempt, the court finds [the defendant] in contempt of its order of November 20, 2006. [The defendant] is ordered to remove the [website] posting . . . dated February 1, 2007, by closing of business today, Friday, February 9, 2007. There will be a $5000 fine imposed upon [the defendant] for each day said posting is on the website after today, February 9, 2007. . . .

"The court further imposes upon all parties a gag order. They are not to have any communication. There will be no communication between [the plaintiffs and the defendant] . . . regarding this litigation, or any ramification of this litigation, or what to do with pro-

---

[15] The motion filed on February 8, 2007, made no reference to the January 26, 2007 letter. "In the case of indirect . . . contempt, the alleged contemnor must be informed that he or she has been charged with contempt, *and the facts constituting the offense must be specified.*" (Emphasis added.) 17 Am. Jur. 2d. 531, Contempt § 159 (2004). Those facts must be set forth with "particularity," so as to comply with due process requirements. (Internal quotation marks omitted.) *In re Gault*, 387 U.S. 1, 33, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967).

[16] The defendant has not appealed the trial court's order requiring the removal of the website posting.

posed settlement funds that are coming in. That includes any and all communication on a website, letters, e-mails, any type of communication between the parties.

"The court wants to make it very clear. This is not a close call. This was a direct violation of the court order. Further violations, the court will not hesitate to bring the person in who violates and [will recommend that] further actions in the form of fines or . . . criminal proceedings take place against that person."[17] The court also clarified that the board could still function in public and try to carry out its recovery plan.[18] This appeal followed.

[17] Although the defendant has not appealed the order to remove the website posting and the gag order has expired, this appeal is not moot. We have recognized that "a contempt finding has collateral consequences, even when no longer 'active,' unless or until it is vacated or rendered invalid. See *Scalo* v. *Mandanici*, 179 Conn. 140, 146–47, 425 A.2d 1272 (1979); *Sgarellino* v. *Hightower*, 13 Conn. App. 591, 594–95, 538 A.2d 1065 (1988)." *Kendall* v. *Pilkington*, 253 Conn. 264, 278 n.7, 750 A.2d 1090 (2000). In light of the continuing litigation between the parties and the continuing imposition of gag orders on the parties, the court's contempt finding may well impact the defendant in the future. See *Sgarellino* v. *Hightower*, supra, 594–95 ("[A] future citation for contempt, given the first finding of contempt which is the subject of this case, would make the defendant appear more recalcitrant than he might be, in fact. Such an impression is likely to affect a trial court's determination of the penalty attendant on any future finding of contempt in this case.").

[18] On February 23, 2007, the court responded to the defendant's motion for clarification of the February 9, 2007 order. During that hearing, the following exchange occurred:

"The Court: I mean, by definition, any gag order is going to have a certain chilling effect.

"[Defense Counsel]: Right, but I interpreted your gag order to mean the parties shouldn't have direct communications with each other about this or with the press, but you know, [the plaintiffs] may be talking about this with their town councils, [the defendant] may be talking about this at our board meetings, and I didn't think that would be drawn into the gag order.

"The Court: Well, I don't—I mean, you're going to have to explain to me why you really . . . . The litigation's pending. There's been a trial. There's now an order for a [prejudgment remedy] on these moneys. I understand there has to be additional planning for the budget and there has to be talk about how you're going to set the tip fees and whatnot, but why does there need to be a conversation on the pending litigation?

"[Defense Counsel]: Well, one simple reason would be—

As a preliminary matter, we set forth the legal principles that guide our resolution of the defendant's claims and identify the applicable standard of review. "Our case law classifies civil contempt as conduct directed against the rights of the opposing party . . . while

---

"The Court: It is what it is. It is what it is.

"[Defense Counsel]: Right. But . . . what would happen is—and this is what they fear—is that all right, [the defendant's chief financial officer] makes a presentation to the board about the present budget that was adopted by the finance committee and he says, 'The budget as adopted by the finance committee has to be changed because of the [prejudgment remedy] ruling. We're not defeasing. That's worth $1 a ton. We have to figure out if we can defease with some [other] money . . . .' Now, that—I didn't think that was a discussion that would fall within your order, but you're . . . suggesting it might be.

\* \* \*

"The Court: Well . . . let me say this: What you said before—what you just described—is fine with the court, but if you start going—

"[Defense Counsel]: But how do I know where the line is?

"The Court: . . . I think what the court's going to have to do is you have your meeting, you do up your minutes, the court's going to have to approve it before it goes out.

"[Defense Counsel]: So you're comfortable with a broad range of discussion at the meeting, but the—it's the minutes themselves that get posted on the website that might have to—

"The Court: Well . . . as . . . [the plaintiffs' counsel] mentioned, I mean, the problem is if the press is there, it's going to get out. The court has entered an order. I think the order is—is pretty clear. When I said obviously you have to do business, obviously, I'm not going to stop you from doing business, but the reason for the order was what this court perceived was a clear violation of a prior order of the court. There was no question in the court's mind that it was a violation and it was used through a posting on your website and the court doesn't want to see a violation through a posting of the minutes.

"You know . . . if they want to discuss it, why can't they go into executive session to discuss it? What you said about the lawsuit you've got these funds, you can't use the funds because of the [prejudgment remedy], therefore, you have to have a discussion of what to do with the tip fee and setting the tip fee, period. Why is there a need to discuss the litigation?

"[Defense Counsel]: I'm not saying there is, but it's hard for me to predict what board members will want to talk about when they get into the boardroom.

"The Court: Well, the—

"[Defense Counsel]: And—and you know, I don't want them to be reluctant or afraid to talk because—

"The Court: Well, they have to be reluctant to talk about the litigation. The order is the order. They cannot talk about the litigation. That's it."

criminal contempt consists of conduct that is directed against the dignity and authority of the court." (Citations omitted.) *Ullmann* v. *State*, 230 Conn. 698, 707, 647 A.2d 324 (1994). Because an alleged act of contempt may interfere with the rights of the opposing party *and* offend the dignity and authority of the court, "[t]he determination of the interest to be addressed and the method of addressing it . . . is left to the sound discretion of the court. . . . Accordingly, a court's power to hold a party in civil or criminal contempt is not limited by the nature of the offense. Rather, it is the nature of the relief itself that is instructive in determining whether a contempt is civil or criminal. A contempt fine is civil if it either coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." (Citations omitted; internal quotation marks omitted.) Id., 708-10.

"Contempts of court may also be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court. . . . A refusal to comply with an injunctive decree is an indirect contempt of court because it occurs outside the presence of the trial court. . . . The question then becomes how conduct, alleged to be in contempt of a court order, that occurred outside of the trial court's presence is proved to be a contempt. Established principles of both constitutional and common law . . . are implicated in this question.

"We recognize that there are constitutional safeguards that must be satisfied in indirect contempt cases. It is beyond question that due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation."

(Citations omitted; internal quotation marks omitted.) *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 150, 496 A.2d 476 (1985). "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." (Internal quotation marks omitted.) *In re Gault*, 387 U.S. 1, 33, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). "Whether the defendant was deprived of his due process rights is a question of law, to which we grant plenary review." *State* v. *T.R.D.*, 286 Conn. 191, 210, 942 A.2d 1000 (2008).

The defendant claims that it was denied due process of law when the court required the defendant to defend the February 8, 2007 motion for contempt. Specifically, the defendant claims that it was not afforded adequate notice of the contempt motion and a meaningful opportunity to prepare a defense because its counsel had received the motion just before 5 p.m. on February 8, 2007, while preparing for the matters previously scheduled, and was required to defend it on the morning of February 9, 2007.[19] We agree.

It is well established that "[i]t is fundamental in proper judicial administration that no matter shall be decided unless the parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue." *Osterlund* v. *State*, 129 Conn. 591, 596,

---

[19] Although the defendant *challenged its opportunity to prepare and not its opportunity to present a defense*, it should be noted that the court found the defendant in contempt after accepting the plaintiffs' exhibits and hearing argument from the attorneys, but without providing an opportunity for the defendant to put on evidence to support a claim that it had not wilfully violated the court's order. "Due process of law requires that one charged with contempt of court be advised of the charges against [it and] have a reasonable opportunity to meet them by way of defense or explanation . . . ." (Internal quotation marks omitted.) *Bryant* v. *Bryant*, 228 Conn. 630, 637, 637 A.2d 1111 (1994). Thus, the defendant was denied an opportunity to prepare and to present a defense.

30 A.2d 393 (1943). The defendant was given less than one day to consider a motion for contempt, which consisted of four pages of allegations, four exhibits totaling in excess of a dozen pages and a request for sanctions that included a statement on the defendant's website disavowing its prior posting and stating that its posting was improper and in violation of the court's order. In addition, when he received the motion for contempt, the defendant's attorney was in the midst of preparing for a previously scheduled hearing before the court. The defendant's attorney stated that he had not read the full text of the posting, that he had not been able to speak to the persons responsible for the website posting or anyone else and that he would like to speak to them about why they had posted the article. Finally, the plaintiffs' attorney acknowledged that the defendant's counsel needed more time to respond and stated that he did not object to scheduling the motion for contempt for a hearing at a subsequent date. It is clear that the defendant's attorney was not afforded sufficient time to investigate, much less to prepare, a defense.[20] It is unclear whether a different result would have been reached had the defendant's attorney been given time to prepare a defense to the motion for contempt, but a denial of due process of law cannot be justified by that uncertainty. See id., 597.

The judgment finding the defendant in contempt is reversed and the case is remanded with direction to vacate the contempt finding.

In this opinion the other justices concurred.

---

[20] We are not unsympathetic to the court's desire to maintain the integrity of its order and to protect the interests of the plaintiffs, especially in light of what the court perceived as a blatant violation. The court, however, had the power to immediately order the defendant to remove the offending website posting and to postpone the hearing on contempt to another day. See *Nelson* v. *Nelson*, 13 Conn. App. 355, 367, 536 A.2d 985 (1988) ("in a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order").