## NANCY G. TREMAINE *v.* JOHN M. TREMAINE
### (14985)

Peters, C. J., and Callahan, Borden, Norcott and Palmer, Js.

---

Argued April 20—decision released August 15, 1995

*Herman H. Tarnow*, for the appellant (plaintiff).

*Wesley W. Horton*, with whom were *Susan M. Cormier*, *Richard L. Goldblatt* and, on the brief, *Christy Scott*, for the appellee (defendant).

PALMER, J. This certified appeal requires us to decide whether the defendant, John M. Tremaine, may be required to pay lump sum alimony to the plaintiff, Nancy G. Tremaine, under the terms of a separation agreement that had been incorporated into the judgment dissolving their marriage and, in addition, whether the defendant has such complete control over the corpus of a certain trust that the value of the entire trust corpus may be included in the calculation of his estate for the purpose

of determining alimony. Two years after the marital dissolution judgment had been rendered, the plaintiff, in accordance with the terms of the separation agreement, filed a motion seeking alimony from the defendant. The trial court awarded the plaintiff both lump sum and periodic alimony based in part on its finding that the value of the entire trust corpus should be considered in determining the defendant's net worth. The Appellate Court concluded that although the trial court had properly considered the trust corpus as an asset of the defendant, the separation agreement incorporated by reference into the marital dissolution judgment did not permit an award of lump sum alimony. *Tremaine* v. *Tremaine*, 34 Conn. App. 785, 643 A.2d 1291 (1994). Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case with direction to establish an appropriate award of periodic alimony to the plaintiff.

The plaintiff filed a petition for certification[1] with this court, claiming that the Appellate Court had incorrectly concluded that an award of lump sum alimony was prohibited under the terms of the marital dissolution judgment. The defendant, who seeks affirmance of the judgment of the Appellate Court reversing the trial court's award of lump sum alimony, also claims that the Appellate Court, like the trial court, improperly concluded that he has such complete control over the trust corpus that, despite the trust form, the value of the entire

[1] We granted certification limited to the following issues: "1. Did the Appellate Court misconstrue the initial presentation of the separation agreement as an 'approved agreement' with respect to the award of alimony where the initial agreement reserved the determination of alimony for a date in the future?

"2. Did the Appellate Court correctly conclude that in a separation agreement that reserves the issue of 'alimony' for determination at a later date, that the term 'alimony' was limited to periodic alimony and did not include lump sum alimony?" *Tremaine* v. *Tremaine*, 231 Conn. 901, 901–902, 645 A.2d 1020 (1994).

corpus should be included in the calculation of his estate.[2] Although we agree with the Appellate Court that the trial court's award of lump sum alimony was not authorized under the marital dissolution judgment, we also conclude that the trial court improperly attributed to the defendant's estate the value of the entire trust corpus.

The relevant facts are undisputed. The plaintiff and the defendant were married in 1972, and had four children. In July, 1986, the plaintiff obtained a legal separation from the defendant on the ground that irreconcilable differences had caused the irretrievable breakdown of their marriage. The plaintiff thereafter sought a divorce from the defendant.

During the pendency of the plaintiff's marital dissolution action, the parties, in December, 1987, executed a written separation agreement. The separation agreement provided, inter alia, that the plaintiff would not request alimony from the defendant for a period of at least twenty-four months from the date of the marital dissolution judgment. The agreement also provided that the plaintiff could thereafter seek alimony in accordance with the provisions of General Statutes § 46b-82[3] for a

[2] The defendant raised this claim under Practice Book § 4140, which provides in relevant part: "(a) Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. *Any party to the appeal may also present for review adverse rulings or decisions which should be considered on the appeal in the event of a new trial, provided that such party has raised such claims in the appellate court. . . .*" (Emphasis added.)

[3] The separation agreement erroneously stated that the plaintiff could seek alimony pursuant to General Statutes § 46b-81 rather than under General Statutes § 46b-82. The parties do not dispute that § 46b-82 is the correct provision.

General Statutes § 46b-82 provides in pertinent part: "Alimony. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes

period not to exceed seven years from the date of the judgment or until the plaintiff's death or remarriage, whichever occurred first and, furthermore, that any alimony awarded by the court would be retroactive to twenty-four months after the date of the dissolution judgment.[4]

for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

[4] Article II of the parties' separation agreement, entitled "ALIMONY AND SUPPORT," provides in relevant part: "2.1 The HUSBAND during his lifetime shall pay to the WIFE during her lifetime, or until her earlier death or remarriage, or seven years from the date of the decree of dissolution of marriage to be entered in this matter, whichever event shall first occur, alimony in such amount as hereinafter provided.

"2.2 The WIFE agrees not to petition for any alimony during the first twenty-four months from the date of the decree of dissolution of marriage. At the end of said period, if the WIFE is alive and has not remarried and the HUSBAND is alive, the court will enter appropriate orders for alimony to the WIFE, but the alimony term shall not exceed a date of seven years from the date of the decree of dissolution of marriage. The Court, at such time, shall take into consideration the statutory criteria as set forth in Section 46b-81 of the General Statutes of Connecticut, as well as the HUSBAND's obligation for the child support provisions as provided in this Agreement.

"2.3 On or before June 1, 1989, the parties shall exchange financial affidavits . . . showing their respective income, assets, liabilities and living expenses. . . .

"2.4 Any order for alimony entered in accordance with the above shall be retroactive to the date which is computed to be twenty-four months from the date of the decree of dissolution of marriage. . . .

"2.10 In the event that the WIFE by reason of nonreceipt of alimony payments in a calendar year as provided in this agreement and the payments thereof are made in a subsequent calendar year or years and the WIFE incurs or pays higher income taxes in such subsequent year or years than she would have paid if the alimony payments had been made in the respective calendar year in which they were due, the HUSBAND shall be obligated to pay to the WIFE the additional income tax payment required to be paid by her or, if paid to reimburse the WIFE for such additional income taxes paid by her. Such payment or reimbursement of income taxes shall be deemed a penalty and not alimony taxable to the WIFE, but if nevertheless so taxable, the HUSBAND shall pay the income taxes thereon. The HUSBAND shall receive a credit for the amount of the income tax saved by the WIFE by reason of

On February 5, 1988, the trial court, *Novack, J.*, rendered a judgment dissolving the parties' marriage. In rendering its judgment, the trial court approved the parties' separation agreement and incorporated it by reference into the divorce decree.

Upon the expiration of the two year period following the dissolution judgment, the plaintiff, who had not remarried, applied for an award of alimony. The trial court, *Hon. Margaret C. Driscoll*, state trial referee, conducted a hearing on the plaintiff's application and, on February 13, 1992, issued a memorandum of decision. In its decision, the trial court concluded that the parties' separation agreement did not specifically prohibit either an award of lump sum alimony or periodic alimony, or both. The trial court then proceeded to review the criteria relevant to alimony under § 46b-82, including the parties' income and assets. The factors relied upon by the trial court in fashioning its alimony award were summarized by the Appellate Court as follows: "The [trial] court then noted that the plaintiff had received the family residence, valued between $750,000 and $975,000, and that she had assumed two mortgages on the property totaling $239,000. It is also noted that she had received physical custody of the four children, and that the defendant had been ordered to pay $36,000 annually in child support. The court then found that at the time of the dissolution the defendant had assets of $1,722,266 and an annual income of $136,000. The plaintiff had minimal work experience and had monthly expenses of $10,917. The court further found that the parties had been married for fourteen years, that the cause of the dissolution was the defendant's conduct, that both parties were accustomed to an 'exceedingly affluent lifestyle and led active, social lives,' that the defendant's income and assets were substantially more than he reported in

the non-inclusion of the taxable alimony in the year or years for which the amount was due and payable."

his financial affidavits, and that the plaintiff's employability was limited by her age, her long absence from the labor market, and the needs of her children, whose best interests counseled against the plaintiff's seeking full-time employment." *Tremaine* v. *Tremaine*, supra, 34 Conn. App. 788.

The trial court included in its calculation of the defendant's assets the corpus of an express, irrevocable trust that had been established in October, 1988, eight months after the dissolution of the parties' marriage, for the defendant's benefit by his grandfather, Burton G. Tremaine, Sr.[5] The trust instrument, known as the Burton G. Tremaine Irrevocable Trust Agreement (trust), provides that, during the defendant's lifetime, the trustee shall pay to the defendant, in periodic installments not less often than quarterly, all of the net income produced by the trust corpus, plus so much of the principal as the trustee, in its sole discretion, determines to be "necessary or advisable for [the defendant's] comfortable care, maintenance and support." The trust instrument also grants to the defendant a testamentary general power of appointment over the corpus of the trust.[6] At the time of its creation, the trust corpus consisted of numerous shares of publicly traded common stock, shares of stock of a private corporation known as the Miller Company, and a small amount of cash. The trial court found that

[5] The trust agreement was established between the settlor, Burton G. Tremaine, Sr., of Madison, Connecticut, and the trustee, AmeriTrust Company National Association of Cleveland, Ohio, for the benefit of each of the four children of Burton G. Tremaine, Jr., the settlor's son. Each of the trust provisions is applicable to each of the settlor's four grandchildren. The trust assets are separated into individual funds for each grandchild for accounting purposes only.

[6] The trust further provides that, in the event that the defendant fails to exercise his power of appointment, the principal shall pass to the then living issue of the defendant or, if none, to the then living issue of the defendant's nearest ancestor who is also a descendant of Burton G. Tremaine, Sr.

by 1989, the corpus of the trust, excluding the Miller Company stock, had a value in excess of $1,000,000.

Under the terms of the trust instrument, the defendant is also empowered to designate a professional investment advisor to "direct the investment, reinvestment or disposal" of all of the trust property except the Miller Company stock.[7] The defendant exercised his right to appoint an investment advisor on May 18, 1989, selecting a Virginia based investment management firm, Nye, Parnell & Emerson Capital Management, Inc. On the following day, the investment advisor directed the trustee to purchase and furnish, with trust funds, a residence located at 127 Lambert Road in New Canaan at a total cost of $644,000. The investment advisor further indicated to the trustee that the defendant should be permitted to reside in the home rent free.[8] The trustee complied

---

[7] Section 3 of the trust instrument provides in relevant part: "The income beneficiary of each trust hereunder shall have the right to designate and appoint from time to time a competent, professional, institutional investment advisor . . . who shall direct the investment, reinvestment or disposal of the Trust Property included in the trust for the income of the beneficiary. . . . If an investment advisor is so designated and appointed, during the term of his appointment the Trustee shall not be responsible in any way for making any investment review or recommendation with respect to the Trust Property, and the Trustee shall not be liable for any loss which may result by reason of the acquisition or retention of any property acquired [or retained] pursuant to the direction of any such investment advisor nor for any loss which may result by reason of the retention of any property if such retention is due to the failure of such investment advisor to approve the sale or other action proposed by it. . . . The foregoing provisions of this Paragraph 3 shall not apply to any stock or other interests held in this Trust of The Miller Company. In respect thereto, the Trustee shall have sole and exclusive right and power to deal with the same as in its complete and absolute discretion may seem best to it for the benefit of all interested in the Trust. . . ."

[8] Joseph P. Nye, Jr., the president of Nye, Parnell & Emerson Capital Management, Inc., advised the trustee of its investment decision by letter dated May 19, 1989. The letter provides in pertinent part as follows: "In our capacity as investment advisor to the [Burton G. Tremaine Irrevocable] Trust we are instructing the Trustee to acquire a certain parcel [of] real property to be held in the Trust as an investment. Specifically, that piece of property located in the town of New Canaan, Connecticut, known as 127 Lambert Road . . . . We have evaluated this piece of real property and once acquired,

with the instructions of the investment advisor.[9] In addition, the trial court found that the defendant had also obtained additional funds of approximately $50,000 from the trust for wedding expenses, legal fees and the repayment of a loan. On the basis of these facts, the trial court concluded that the defendant had "total control of the disposition of the [trust] principal . . . ."[10]

After considering the factors relevant to a determination of alimony under § 46b-82, the trial court concluded that the plaintiff was entitled to both lump sum and periodic alimony. Accordingly, the court awarded the plaintiff lump sum alimony in the amount of $350,000, along with periodic alimony of $1000 per week retroactive to June 1, 1990, such periodic payments to continue until June 1, 1995.

The defendant appealed from the judgment of the trial court to the Appellate Court, claiming, inter alia, that the trial court had improperly: (1) awarded lump sum alimony to the plaintiff contrary to the terms of the separation agreement that had been incorporated into the marital dissolution judgment; and (2) concluded that the trust instrument confers upon the defendant such complete control over the trust corpus that the value of the entire corpus should be included in the calculation of the defendant's estate for the purpose of determining alimony. The Appellate Court agreed with the defendant and concluded that only periodic alimony, and not lump

will continue to supervise this holding as long as we remain the investment advisor of the above mentioned Trust. . . . Finally, at this juncture, I do not feel that Mr. Tremaine will be required to lease the property from the Trust. If, in our view, this becomes necessary at some point in the future I am sure the appropriate arrangements can be made. . . ."

[9] Under § 4 of the trust instrument, the trustee's authority to hold, manage and distribute the trust property is "[s]ubject to the . . . provisions [of § 3 of the trust instrument] concerning investment advice."

[10] The trial court acknowledged that the defendant did not have control over that portion of the trust corpus comprised of Miller Company stock. See footnote 7.

sum alimony, was authorized under the dissolution judgment. *Tremaine* v. *Tremaine,* supra, 34 Conn. App. 792–93. The Appellate Court also concluded, however, that the trial court had properly considered the value of the entire trust corpus in determining the value of the defendant's assets. Id., 798–99. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case with direction to establish an appropriate award of periodic alimony to the plaintiff.

On appeal to this court, the plaintiff claims that the Appellate Court incorrectly concluded that the trial court, *Novack, J.,* had approved the parties' separation agreement insofar as the agreement purported to govern the kind of alimony that could be awarded to the plaintiff and, consequently, that the Appellate Court was incorrect in concluding that Judge Driscoll was bound by the terms of the separation agreement. The plaintiff further claims that, even if Judge Driscoll was bound by the terms of the separation agreement, the agreement did not prohibit an award of lump sum alimony. The defendant claims that the trial court and the Appellate Court incorrectly concluded that the trust instrument confers upon the defendant such complete control over the trust corpus that the value of the entire corpus should be included in the calculation of the value of his estate. We agree with the Appellate Court that the trial court was without authority to award the plaintiff lump sum alimony, but we disagree that the trial court, on the record before it, properly included the value of the entire trust corpus in its calculation of the defendant's estate for the purpose of determining alimony.

I

The plaintiff first claims that the Appellate Court incorrectly concluded that Judge Novack had approved that portion of the separation agreement that the defendant

claims limits any future award of alimony to periodic alimony. The plaintiff contends that the only aspect of the separation agreement approved by Judge Novack relating to alimony was the provision of the agreement that prohibited the plaintiff from seeking alimony within twenty-four months of the date of the marital dissolution judgment. According to the plaintiff's argument, even if the separation agreement could be construed to proscribe any future award of lump sum alimony, Judge Driscoll was free to accept or reject any such provision under General Statutes § 46b-66[11] because it had not been approved by Judge Novack. See *Sands* v. *Sands*, 188 Conn. 98, 103, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983) (trial court not bound by terms of parties' agreement on alimony if court determines that stipulation is not fair and equitable).

We reject the plaintiff's claim because it has no support in the record. Judge Novack expressly approved the parties' separation agreement and, contrary to the plaintiff's contention, there is no indication that his approval was limited to any particular term or terms of

---

[11] General Statutes § 46b-66 provides: "Review of agreements; incorporation into decree. In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. If the court finds the agreement is not fair and equitable, it shall make such orders as to finances and custody as the circumstances require. If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d."

the agreement.[12] Furthermore, the record contains no suggestion that Judge Driscoll believed that she was free to reject any of the provisions of the separation agreement, or that Judge Driscoll had in fact rejected any of the agreement's terms. On the contrary, Judge Driscoll expressly acknowledged that her review of the plaintiff's petition for alimony was governed by the terms of the separation agreement.[13] Thus, the plaintiff's claim that Judge Driscoll was not bound by the terms of the separation agreement approved and incorporated into the marital dissolution judgment by Judge Novack is without merit.

## II

The plaintiff also argues that the Appellate Court improperly construed the parties' separation agreement as precluding an award of lump sum alimony. The plaintiff contends that because the alimony provisions contained in article II of the separation agreement do not specifically prohibit an award of lump sum alimony; see footnote 4; the Appellate Court was incorrect when it concluded that the parties contemplated an award of periodic alimony only. We disagree with the plaintiff.

Where, as here, the parties' written agreement regarding alimony is fair and equitable, the court is authorized to incorporate that agreement by reference into its dissolution judgment. See General Statutes § 46b-66. "A judgment rendered in accordance with such a stipulation of

[12] In rendering the dissolution judgment, Judge Novack stated that "[t]he written separation agreement entered into between the parties is approved. It's found to be fair and equitable, and may be incorporated by reference in the decree."

[13] Judge Driscoll's award of lump sum and periodic alimony to the plaintiff was predicated on her conclusion, contained in the memorandum of decision on the plaintiff's application for alimony, that "[t]here appears to be no provision in the separation agreement which specifically prohibits [lump sum alimony], and the provision concerning alimony does not limit it in any way except duration."

the parties is to be regarded and construed as a contract." *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990). Thus, our resolution of the plaintiff's claim is guided by the principles that govern the construction of contracts.

"A contract is to be construed as a whole and all relevant provisions will be considered together. . . . In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties. . . . The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citations omitted; internal quotation marks omitted.) Id., 109–10. "Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 279, 654 A.2d 737 (1995). Absent a statutory warranty or definitive contract language, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact that is subject to reversal on appeal only if it is clearly erroneous. *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 199, 520 A.2d 208 (1987). Applying these principles to the separation agreement incorporated into the dissolution judgment,

we agree with the Appellate Court that the parties' agreement precluded an award of lump sum alimony and that the interpretation of the stipulated judgment by Judge Driscoll was clearly erroneous.

Judge Driscoll noted that article II of the separation agreement did not expressly prohibit an award of lump sum alimony and, on that basis, concluded that it was free to award both lump sum alimony and periodic alimony to the plaintiff. In so concluding, however, Judge Driscoll failed to give effect to several provisions of the separation agreement that together clearly reflect the parties' intent to limit any award of alimony to periodic alimony. Specifically, § 2.2 of article II of the agreement provides that the defendant's obligation to pay alimony shall not commence until two years after the date of the dissolution judgment, that "the alimony term shall not exceed a date of seven years from that date," and that the defendant's alimony obligation would cease upon the death either of the plaintiff or the defendant, or the remarriage of the plaintiff. Furthermore, § 2.4 of the agreement states that any alimony award shall be retroactive to the date of the judgment. The Appellate Court correctly concluded that these provisions, which contemplate a series of payments to be made over time rather than a single, unitary payment, are clearly indicative of an award of periodic alimony and not lump sum alimony.

Two other provisions of the separation agreement also support the defendant's contention that the trial court's award of lump sum alimony was not authorized under the agreement. First, § 13.2 of the agreement permits either party to seek a modification of the alimony award based upon a change in circumstances.[14] "Lump sum

[14] Section 13.2 of the separation agreement provides in relevant part that the "[t]he termination date of alimony . . . shall not be subject to any modification as provided in Section [46b-86 (a)] of the General Statutes of Connecticut. Except as to this termination date the law of the State of Connecticut

alimony, unlike periodic alimony, is a final judgment which cannot be modified even should there be a substantial change in circumstances." *Scoville* v. *Scoville*, 179 Conn. 277, 279–80, 426 A.2d 271 (1979). Thus, as the Appellate Court stated, "because lump sum alimony is not modifiable as a matter of law, whereas periodic alimony is modifiable unless the decree explicitly precludes modification, the presence in the separation agreement of language regarding the nonmodifiability of the alimony payments indicates that only periodic alimony was contemplated by the parties." *Tremaine* v. *Tremaine*, supra, 34 Conn. App. 791.

Second, article X of the agreement, entitled "Tax Application," provides further substantiation for the defendant's claim that the agreement precluded an award of lump sum alimony. Sections 10.4 and 10.5 of article X state in relevant part that "*all payments* pursuant to [article II] hereof are intended to be alimony deductible by the HUSBAND and includible by the WIFE *in their entirety. . . .* The WIFE agrees to include *all of the payments* which she receives as set forth in [article II of the agreement], as income in her Federal and, if appropriate, State and/or Municipal tax returns and that she shall be solely responsible for any and all taxes on such income." (Emphasis added.) As the Appellate Court concluded, because lump sum alimony is generally neither taxable to the payee nor deductible by the payor under the Internal Revenue Code; see 26 U.S.C. §§ 71 and 215; §§ 10.4 and 10.5 of the separation agreement are not compatible with an intent that the defendant pay lump sum alimony. *Tremaine* v. *Tremaine*, supra, 34 Conn. App. 791.

as to substantial change in circumstances shall be applicable. . . . In the event either party petitions for a modification as hereinabove permitted, this Agreement shall be automatically deemed modified in the same manner and to the same extent as the Judgment."

In light of these provisions, and in the absence of any suggestion in the separation agreement that the parties contemplated the possibility of an award of lump sum alimony, we agree with the Appellate Court that the dissolution judgment precluded the trial court from awarding lump sum alimony to the plaintiff.[15] Although the judgment rendered by the trial court includes an award of periodic alimony, we agree with the Appellate Court that the trial court must be afforded an opportunity to reconsider that award "[b]ecause the financial orders of the trial court granting both lump sum and periodic alimony are interwoven," and, therefore, "[t]he amount the plaintiff should receive as periodic alimony is necessarily affected by our conclusion that lump sum alimony could not be awarded." Id., 793. Accordingly, the case must be remanded to the trial court so that it may fashion an appropriate award of periodic alimony to the plaintiff.

### III

The defendant claims that the Appellate Court improperly concluded that the trust instrument bestows upon him such complete control over the trust corpus that the value of the entire corpus should be included in ascertaining the value of the defendant's estate for the purpose of determining alimony. We agree.

Before addressing the merits of the defendant's claim, we note that the trust instrument specifies that "[t]he trusts created by this instrument shall be deemed to have their situs in the State of Ohio. The validity of the trusts created hereunder and the validity, construction and interpretation of the provisions contained in this

---

[15] In view of our conclusion, we need not consider the defendant's claim that the trial court improperly excluded as privileged the testimony of the plaintiff's former counsel, Jerroll Silverberg, who had participated in the drafting of the separation agreement. Because we conclude that the parties' intent to preclude an award of lump sum alimony is unambiguously manifested in the four corners of the separation agreement, no testimony was needed to establish the intent of the parties.

instrument shall be determined in accordance with the laws of the State of Ohio from time to time in force." Accordingly, our construction of the trust instrument must be guided by Ohio law.[16]

Under the law of Ohio, the beneficiary of a trust may exercise no greater control over the trust property than the settlor has granted to him by means of the trust instrument. *Scott* v. *Bank One Trust Co., N.A.*, 62 Ohio St. 3d 39, 48, 577 N.E.2d 1077 (1991). Thus, a "fundamental [tenet] for the construction of a . . . trust is to ascertain, within the bounds of the law, the intent of the testator, grantor or settlor." *Domo* v. *McCarthy*, 66 Ohio St. 3d 312, 314, 612 N.E.2d 706 (1993). In determining the intent of the settlor, the words used in the instrument are to be interpreted in their ordinary sense, and all of the provisions of the trust instrument must be construed together, with every word given effect, if possible. *Stevens* v. *National City Bank*, 45 Ohio St. 3d 276, 279, 544 N.E.2d 612 (1989). When the language of the trust instrument is not ambiguous, intent can be ascertained from the express terms of the trust itself. *Domo* v. *McCarthy*, supra, 314.

With these principles in mind, we turn to the relevant terms of the trust agreement. Section 2 (a) of the trust instrument directs the trustee to make regular payments to the defendant of all of the income earned by the trust for the duration of the defendant's life. Section 2 (a) further provides that the trustee shall pay to the defendant so much of the trust principal as shall, in the sole discretion of the trustee, be necessary or advisable for the "comfortable care, maintenance and support" of the defendant. Finally, § 3 of the trust instrument authorizes the defendant to select an "investment advisor" to direct

---

[16] Although our construction of the trust agreement is governed by the law of the state of Ohio, the ultimate question of whether the value of the entire trust corpus was properly attributable to the defendant's estate must be determined under the law of this state.

the "investment, reinvestment or disposal" of the trust property. The defendant claims that because these provisions do not bestow upon him the right to direct a distribution of trust corpus to himself, the corpus cannot be considered his property. The plaintiff, on the other hand, contends that the trust instrument affords the defendant complete control over the trust principal, including the right to effect payments of principal to himself, and, therefore, that the trial court properly included the value of that corpus in its calculation of the value of the defendant's estate.

The plaintiff posits two general arguments in support of her contention that the trust instrument gives the defendant total control over the trust corpus. She first contends that the investment advisor has the power, under the provision of the trust instrument that authorizes the advisor to direct the "disposal" of the trust property, to direct the trustee to distribute the trust principal to the defendant. The plaintiff argues that because the trust agreement authorizes the defendant to select an investment advisor of his choice, the defendant can appoint an advisor who will, in accordance with the defendant's wishes, direct the trustee to distribute the trust corpus to the defendant.

We do not agree with the plaintiff that the trust instrument empowers the investment advisor to direct the distribution of trust property to the defendant. Under § 3 of the instrument, the investment advisor is authorized to supervise and direct the *investment* decisions of the trust. Because the "disposal" of trust principal by means of a distribution to the defendant cannot reasonably be construed to constitute an investment decision, we are persuaded that such a distribution is not permitted under the terms of the trust instrument. Furthermore, § 2 (a) of the trust instrument expressly authorizes the trustee to make payments to the defendant from the trust corpus that, *"in the sole discretion*

*of the [t]rustee,"* are necessary or advisable for the defendant's care, maintenance and support. (Emphasis added.) The construction of the term "disposal" urged by the plaintiff is inconsistent with the settlor's mandate that the distribution of trust principal is a matter solely within the discretion of the *trustee.*

We conclude, rather, that the investment advisor's right to direct the "disposal" of the trust corpus is limited to the power to *sell* the trust property, for purposes of diversifying the trust assets, preserving the value of the trust property, or for some other legitimate reason. This interpretation of the trust instrument is consistent with the intent of the settlor as expressed throughout the trust instrument, and is the construction ordinarily ascribed to the term "disposal" as it pertains to a trustee's duty to manage trust corpus. See, e.g., *Stevens* v. *National City Bank,* supra, 45 Ohio St. 3d 281; 1 Restatement (Second), Trusts § 230 (1959). Thus, because the investment advisor's right to direct the "disposal" of trust property embraces only the authority to direct the sale of trust assets, the plaintiff's contention that the defendant can effect a distribution of the trust property to himself through the investment advisor is without merit.

The plaintiff also claims that even if the investment advisor cannot lawfully direct the distribution of trust property to the defendant, the trust instrument otherwise empowers the defendant to exercise such complete control over the trust corpus that it must be considered his asset. The plaintiff maintains that the defendant's control over the trust principal is evidenced by the investment advisor's direction to the trustee to purchase the New Canaan home, by the advisor's decision to allow the defendant to reside there rent free, and by the trustee's distribution of $50,000 in trust funds to the defendant. We do not agree.

We first note that the defendant does not have authority under the trust instrument to invade the trust corpus, either for his own benefit or for that of another, and he similarly is not entitled to payments of trust principal in excess of what the trustee may deem to be appropriate for the defendant's care and support. See II A. Scott, Trusts (4th Ed. W. Fratcher 1987) §§ 128.3 and 128.4; 1 Restatement, supra, § 128, comment (e); see also *Bureau of Support in Dept. of Mental Hygiene & Correction* v. *Kreitzer,* 16 Ohio St. 2d 147, 150, 243 N.E.2d 83 (1968); *Thomas* v. *Harrison,* 24 Ohio Op. 2d 148, 150, 191 N.E.2d 862 (1962). Furthermore, as we have previously indicated, the investment advisor appointed by the defendant cannot direct the trustee to make payments of trust principal to the defendant.

It is true, of course, that the defendant has the right under the trust instrument to appoint an investment advisor who, in turn, has broad authority to direct the investment of the trust's assets. It is also true that the advisor appointed by the defendant instructed the trustee to purchase and furnish a home to serve as the defendant's rent free abode. Legal title to that home, however, resides in the trustee and not in the defendant. See *First National Bank* v. *Tenney,* 165 Ohio St. 513, 518, 138 N.E.2d 15 (1956) (in valid trust, legal title of trust property is owned by trustee, while beneficiary has mere beneficial interest in use of that property). Thus, although the defendant has the use of the New Canaan house, he does not own it. Accordingly, the value of the house to the defendant is not what the house is worth, but rather how much the defendant's rent free use of the house saves him in living expenses. Because the defendant's interest in the New Canaan residence is not tantamount to ownership of the property, we are unable to agree with the Appellate Court that "[t]he act of the investment advisor in directing the trustee to purchase a particular house for the defendant

shows that the principal of the trust is really the defendant's own."[17] *Tremaine* v. *Tremaine,* supra, 34 Conn. App. 799.

Furthermore, we are not persuaded, contrary to the conclusion of the Appellate Court, that the investment advisor's decision to purchase an asset that has subsequently depreciated in value[18] supports the trial court's determination that the defendant controls the entire trust corpus. That the purchase of the New Canaan property may not have been a wise investment decision does not alter the fact that the defendant has no ownership interest in the property.

Finally, the plaintiff claims that the trustee's payment of $50,000 to the defendant for various expenses also indicates that the trust corpus is the property of the defendant. As we have previously stated, however, the defendant cannot control the distribution of the trust corpus; under the terms of the trust instrument, the trustee alone is responsible for deciding whether the defendant may receive payments of trust principal.[19]

[17] We note that the investment advisor may have lacked the authority under the trust instrument to direct the trustee to allow the defendant's rent free use of the New Canaan residence because that decision may not have been a bona fide investment decision. It is not clear, however, that the investment advisor actually directed the trustee to permit the defendant to reside in the home rent free; see footnote 8; and we may therefore presume that the trustee exercised its own discretion in authorizing the defendant to forego the payment of rent. Furthermore, the defendant, as the income beneficiary of the trust, would have been entitled to any rental income generated by the residential property. Thus, by paying rent to the trust the defendant would merely be routing the rental payments to himself through the trust. The net economic effect, therefore, of the "no rent" provision is the same as if the trustee had charged the defendant a fair market rent.

[18] According to the defendant's financial statement, the New Canaan property has depreciated in value.

[19] The plaintiff does not claim that the investment advisor directed the trustee to make the payments to the defendant totaling $50,000, or that the trustee otherwise failed to exercise properly its discretion in concluding that those payments were "necessary or advisable for [the defendant's] comfortable care, maintenance and support."

The fact that the trustee has in the past exercised its discretion to make payments for the "care, maintenance and support" of the defendant, and that it may again do so in the future, does not support the plaintiff's contention that the defendant can control the distribution of the trust corpus.

Our rejection of the plaintiff's claim that the trust instrument empowers the defendant to exercise complete control over the trust corpus does not, however, preclude the trial court, on remand, from considering the trust's actual value to the defendant. Indeed, because the defendant is entitled to receive, for the duration of his lifetime, all of the income produced by the trust corpus, the trial court's determination of the defendant's income should include the trust income reasonably to be expected from the prudent investment of the trust corpus. Moreover, any payment or other benefit actually bestowed on the defendant by the trustee, including the value to the defendant of the rent free residence, will be relevant to the trial court's calculation of the value of the defendant's estate and, therefore, will bear upon the court's determination of an appropriate periodic alimony award. We conclude only that the trial court, in establishing its award of periodic alimony on remand, may not consider the value of the entire trust corpus as an asset of the defendant.[20]

The judgment of the Appellate Court is affirmed insofar as it reversed the judgment of the trial court and

---

[20] Because the trust instrument does not prohibit the defendant either from assigning his right to receive the trust income during his lifetime or from promising to exercise his testamentary power of appointment in favor of a particular person or entity, the defendant's interest in the trust may have value to an investor willing to purchase from the defendant an assignment of the trust income and the defendant's promise to exercise his testamentary power of appointment in favor of the investor. If the plaintiff can establish that a market exists for the defendant's interest in the trust, the trial court would not be precluded from assigning a value to that interest for the purpose of determining the defendant's net worth. We intimate no view, however, on whether the trust does, in fact, have a market value and, if so, what that value may be.

remanded the case with direction to establish an appropriate award of periodic alimony to the plaintiff. The judgment of the Appellate Court is reversed insofar as it affirmed the decision of the trial court that the trust constituted an asset of the defendant for the purpose of determining alimony and the case is remanded to the Appellate Court with direction to remand the case to the trial court for a new hearing regarding alimony.

In this opinion the other justices concurred.