[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 1428-J
This memorandum of decision addresses the defendant's Amended Motion for Contempt, dated August 21, 1995. Therein, the defendant claims that the plaintiff failed to pay expenses related to the property known as 99 Paul Drive in Windsor Locks[1] and failed to maintain this property, in violation of court orders. The defendant further claims that the plaintiff failed to pay that portion of the minor children's medical costs attributed to him by court order. This court finds that the defendant has not met her burden of proving that the plaintiff is in contempt of court orders. Nonetheless, the court finds that remedial orders should be issued, in the interest of justice and to enhance the likelihood of a more consanguine relationship between the parties in the future.
The marriage of the parties was dissolved on January 31, 1992. (C. Jones, J.) On that date, the court found that the contemporaneous agreement made by the parties, in support of their dissolution action, was fair and equitable, and the court incorporated that agreement into the judgment by reference.[2]
Paragraph 5.1 of the agreement established that the parties will "share equally in any medical, dental, orthodontial, optical, psychological, prescriptive, hospital and related expenses of the minor children to the extent that such expenses are not reimbursed by insurance." Paragraph 6.6 of the agreement imposed the following obligations upon the plaintiff, concerning 99 Paul Drive: "The husband agrees and assumes to pay the first mortgage, real estate taxes, homeowners insurance and maintenance expenses
in connection with said premises and will hold the wife harmless from any claim herein." (Emphasis added.)
On August 31, 1995, the defendant had also filed a motion to clarify the meaning of paragraph 6.1 of the agreement.[3] The defendant submitted that the agreement's use of the term "maintenance" failed fully and fairly to apprise the parties of the plaintiff's financial and physical obligations toward to 99 Paul Drive. After argument presented on October 17, 1995, the court denied the defendant's motion to clarify. The court found that the term "maintenance," as used in the agreement, was plain and unambiguous, and that its usual and customary meaning would give full force and effect to the resolution of the parties' claims as recorded in the agreement, and incorporated into the judgment. Tremaine v. Tremaine, 235 Conn. 45, 57-58 (1995). See CT Page 1428-K also Kronholm v. Kronholm, 16 Conn. 124, 128 (1988).
In family relations cases, a judgment rendered by the trial court in accordance with an agreement or stipulation is considered to be a contract binding the parties. Tremaine v.Tremaine, supra, 235 Conn. 57; Kronholm v. Kronholm, supra,16 Conn. App. 130; Caracansi v. Caracansi, 4 Conn. App. 645, 650, cert. denied, 197 Conn. 805 (1985). As when construing contracts arising under other circumstances, when the court evaluates an agreement incorporated by reference in a family relations case, it must examine the entire document to determine whether its terms disclose "ambiguity or language reasonably subject to different interpretations." Kronholm v. Kronholm, supra, 16 Conn. App. 128,130-31. The question for the court "is not what intention existed in the minds of the parties but what intention is expressed in the language used . . . When the intention conveyed is clear and unambiguous, there is no room for construction . . . ." (Citations omitted.) Kronholm v. Kronholm, supra, 16 Conn. App. 130-131. The court reviewing such an agreement must then accord the language used "`its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . .'" (Citations omitted.) Tremaine v. Tremaine, supra, 235 Conn. 57.
The court notes that where the text of an agreement "reasonably allows for varying interpretations — whether by the inadvertence or design of the draftsman — the need for judicial construction cannot, and may not, be avoided." (Citations omitted.) Nelson v. Nelson, supra, 13 Conn. App. 360. "While it is fundamental that the terms of a written contract which is intended by the parties to set forth their entire agreement may not be varied by parol evidence, it is equally fundamental that when the words used in the contract are uncertain or ambiguous, parol evidence of conversations between the parties or other circumstances antedating the contract may be used as an aid in the determination of the intent of the parties which was expressed by the written word." (Citations omitted.)Kronholm v. Kronholm, supra, 16 Conn. App. 131. Where two possible interpretations of a contractual provision may be made, "courts prefer the more equitable and rational interpretation." (Citations omitted.) Nelson v. Nelson, 13 Conn. App. 355, 362
(1987).
It is a fundamental precept of family law that a party's inability to obey a court order, without fault or complicity on CT Page 1428-L his part, is an adequate defense to a charge of contempt. Bryantv. Bryant, 228 Conn. 630, 636 (1994). "In a contempt proceeding,even in the absence of a finding of contempt, a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order. . . . `Such court action, however, must be supported by competent evidence.'" (Citations omitted; emphasis in the original.) Clement v. Clement, 34 Conn. App. 641, 647 (1994).
 I
BURDEN OF PROOF — CONTEMPT
The court acknowledges and appreciates the research and references provided by counsel concerning the burden of proof to be met by a party raising the issue of contempt in a case such as this. As counsel have noted, the Connecticut Supreme Court most recently addressed this issue in Bryant v. Bryant, supra,228 Conn. 637. There, the court affirmed that "[w]hen the conduct underlying the alleged contempt does not occur in the presence of the court, a contempt finding `must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases.'" (Citations omitted.) Id.
For its explication of the term "sufficient proof", theBryant court relied upon its earlier analysis in Cologne v.Westfarms Associates, 197 Conn. 141, 155 (1985). Cologne v.Westfarms Associates reveals the court's concern with ensuring constitutional safeguards for the conduct of a hearing held to determine whether an individual should be found in contempt of court. Cologne v. Westfarms Associates, 197 Conn. 150-151, 156. In Cologne, the trial court had made its finding of contempt based on unsworn testimony and representations by counsel for the plaintiff, without the opportunity for cross examination. Id., 153, 155. Finding such basis to be incompetent and insufficient, the court remarked: "[W]e are compelled to affirm the established principle of law that a finding of indirect civil contempt must be established by `sufficient proof' that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure `as in ordinary cases.'" (Citations omitted.) Id., 155.[4] The parties here join in asking this court to use the "clear and convincing" standard of proof to evaluate whether the plaintiff has been shown to be in contempt of court orders. Defendant's Brief, October 17, 1995, p. 2; CT Page 1428-M Plaintiff's Memorandum, submitted October 17, 1995, p. 1-2.) Both counsel cite footnote 11 of Cologne v. Westfarms Associates, supra, which references the burden of proof employed by the federal courts, including the Second Circuit Court of Appeals, when adjudicating matters of claimed civil contempt: "fn. 11 We note that in the federal system the burden of proof in civil contempt cases is the `clear and convincing evidence' standard. See Oriel v. Russell, 278 U.S. 358, 362, 49 S.Ct. 173,73 L.Ed. 419 (1928); In re Irving, 600 F.2d 1027, 1037 (2d Cir.), cert. denied, 444 U.S. 866, 100 S.Ct 137, 62 L.Ed.2d 89 (1979); Goldfarb, Contempt Power (1963) p. 251; see generally note, "Procedures for Trying Contempt in the Federal Courts," 73 Harv. L. Rev. 353 (1959)." Cologne v. Westfarms Associates, 197 Conn. 152
n. 11. Use of the "clear and convincing" standard will ensure protection of the rights of the alleged contemnor, while affording the claimant a full and fair opportunity to be heard. The court joins the parties in adopting the "clear and convincing" standard for use in this case.
 II
UNREIMBURSED HEALTH CARE COSTS
The court finds that the defendant has accumulated a total of three hundred twenty dollars ($320.00) in unreimbursed health care expenses on behalf of the minor children. Paragraph 5.1 of the agreement requires the plaintiff to pay one half of these expenses: the plaintiff's resulting obligation is responsibility for one hundred sixty dollars ($160.00) of unreimbursed health care expenses. The plaintiff is hereby ordered to pay this amount to the defendant within three weeks of this decision; the defendant is then charged with the responsibility of seeing that payments are made promptly for any health care providers' outstanding accounts.
It is clear that the parties have not developed a consistent and efficient protocol by which the plaintiff can become informed of unreimbursed medical expenses incurred on behalf of the minor children. To remedy this, the court further orders that, immediately upon receipt, the defendant shall furnish the plaintiff with a copy of each statement rendered by a health care provider who renders services to the minor children. The defendant shall further furnish the plaintiff, immediately upon receipt, with a copy of each statement rendered by any insurance carrier who has provided benefits in response to charges incurred CT Page 1428-N for the childrens' health care. This process will assure the plaintiff timely communication of the amount and nature of all unreimbursed health care expenses relating to the children. The plaintiff is ordered to calculate and pay promptly to the health care provider his one-half share of such unreimbursed health care expenses, and is further ordered to furnish the defendant with a copy of each remittance to the providers involved.
 III
MAINTENANCE EXPENSES
Black's Law Dictionary (6th Ed. 1990) provides the following primary definition for reference in this case: "Maintenance. The upkeep or preservation of condition or property, including cost of ordinary repairs necessary and proper from time to time for that purpose." The court will apply this usual and customary definition to the defendant's claim that the plaintiff has failed to meet his obligation to pay certain maintenance expenses related to 99 Paul Drive. Tremaine v. Tremaine, supra,235 Conn. 57-58.
The court notes that the agreement required the defendant to transfer her interest in the 99 Paul Drive to the plaintiff, in return for which she received certain considerations. The agreement creates a temporary leasehold opportunity through which the defendant is entitled to occupy 99 Paul Drive until the occurrence of any condition or event specified in Paragraph 6.4. The agreement therefore provides the plaintiff with a vested, ownership interest in the "upkeep" of 99 Paul Drive. It is in the plaintiff's best interest, as well, to ensure that the property receives timely and appropriate "repairs necessary and proper from time to time" for the purpose of preserving the condition of this substantial asset.
Accordingly, the natural, ordinary, and equitable interpretation of the judgment would impose upon the plaintiff the burden and cost of providing such repairs, upkeep and preservation as would allow the property to avoid physical deterioration. This burden would extend to repair, upkeep and preservation of: the residential structure at 99 Paul Drive, fixtures within that structure, and the real property and appurtenances surrounding and attaching to the structure. The plaintiff should not be responsible, on the other hand, for the performance of routine seasonal and housekeeping tasks, which may CT Page 1428-O enhance the occupants' environment, but which are not necessary for the preservation of the property.
The evidence disclosed that the defendant has incurred certain expenses for leaf removal, lawn mowing, yard pickup, snow plowing, awning installation and removal, and the cleaning of windows, carpets and curtains at 99 Paul Drive. The court finds that such outlays do not fall within the category of "maintenance expenses" with which paragraph 6.6 of the agreement burdens the plaintiff.
In addition, the evidence disclosed that the defendant incurred the following expenses for repair, upkeep and preservation of the structure and appurtenances to 99 Paul Drive:
Repair of build-in dishwasher . . . . . $ 84.75
Screen door replacement . . . . . . . . $ 75.00
TOTAL $159.75.
The evidence also disclosed that the plaintiff has secured certain repairs for 99 Paul Drive, to wit: painting related to upkeep of the dwelling, replacement of a garage door opener, correction of deficient heating and air conditioning. The court finds that such services constitute repair, upkeep and preservation for 99 Paul Drive. However, no sums are owed to the defendant for costs incurred in relation to these services, as they were provided without cost to her. Therefore, in accordance with paragraph 6.6 of the agreement, the court orders the plaintiff to pay the defendant one hundred fifty-nine dollars and seventy-five cents ($159.75) within three weeks of this decision.
The evidence further disclosed that repair or replacement of a vinyl liner is needed to preserve the use and value of the swimming pool appurtenant to the residence at 99 Paul Drive. It is the plaintiff's obligation to provide repair or replacement of this liner.[5] The plaintiff is ordered to meet this obligation on or before June 15, 1996. The plaintiff and the defendant are to share equally any unreimbursed cost for refilling the swimming pool, if such is needed after the repair or replacement of the liner is performed.
It is also clear that the parties have not developed a consistent and efficient protocol by which the plaintiff can CT Page 1428-P become informed of the need for repair, upkeep and preservation of 99 Paul Drive. To remedy this, the court orders that the defendant shall notify the plaintiff of such needs, in writing, immediately upon recognition. The plaintiff shall be allowed a reasonable opportunity to address those needs himself, or to procure the services of an appropriate repair person. If the plaintiff fails to respond within a reasonable time, the defendant may incur reasonable costs for such repair, upkeep and preservation as is necessary, and the plaintiff shall be responsible for prompt reimbursement of those costs.
WHEREFORE, the defendant's Amended Motion for Contempt is denied, and the above orders are entered, without further relief to either party.
BY THE COURT,
______________________ N. Rubinow, J.