[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband, 54, and the defendant wife, 53, whose birth name is Janjic, married on November 10, 1990 in Greenwich, Connecticut. The plaintiff had been divorced and was responsible for child support for two children aged 10 and 6 at the time of CT Page 6131 this marriage. The defendant was a widow with two sons residing with her.
The plaintiff is a high school graduate. He had been employed by Greenwich Hospital for 14 years when this marriage occurred. At or about the same time as the marriage, he applied for social security disability retirement which was awarded to him in 1991. He currently takes four medicines for his health conditions. He has been on some form of medication since childhood. He has not worked since the SSI award for which he receives $1,113 monthly.
The plaintiff has an undivided 25% interest in a home 75% owned and occupied by his former wife located at 17 Scott Street, Norwalk, Connecticut. (FA89-0098719-S). He values his interest at $9,500 on his financial affidavit. He has a vested pension at Greenwich Hospital to which he assigns no value on his financial affidavit, labeling it "undetermined." Plaintiff's Exhibit 3A states that at age 55 the plaintiff may draw $139.22 monthly life annuity and at age 65 he may draw $366.38 monthly life annuity. No present value was put in evidence. He has health insurance with Aetna Group covering himself, his two children and the defendant.
The plaintiff's mother died on November 21, 1995. Prior thereto, on July 27, 1994, she created the "Lois E. Kraft Trust." (Plaintiff's Exhibit #1). Pursuant to Article IV the plaintiff received $25,000 from the trust upon his mother's death. At the time of trial he had $12,000 remaining from the payment. He is an income beneficiary subject to the "sole and absolute" discretion of the trustee who also may invade the principal for the plaintiff's benefit. The trust does not terminate during the plaintiff's lifetime unless the corpus is exhausted. Prior to her death the plaintiff's mother transferred assets in the nature of various securities and her home to the trust, valued at $796,231 at the time of her death. An additional $187,125 was delivered to the trust upon the plaintiff's mother's death. Tremaine v. Tremaine,235 Conn. 45 (1995) clearly holds that this court must treat the trust created by the plaintiff's mother as not being an asset of the plaintiff, contrary to the defendant's assertions.
The parties separated on June 29, 1995 when the plaintiff left the defendant's home. He has been and continues to be provided a home in property owned by the trust. The court considers this circumstance in fashioning the financial orders infra, Tremaine, at pp. 64 and 66. CT Page 6132
The defendant has been employed by Greenwich Hospital since 1964 as an aide. Currently she is employed part time on an on-call basis. On June 25, 1995 she injured her back while at work resulting in a workers' compensation claim, surgery on February 22, 1996, permanent partial disability and a reduced earning capacity since she can only perform light duty with no lifting. She has other health problems unrelated to the compensation claim.
At the time of this marriage, the defendant owned her home at 30 Hollow Wood Lane, Greenwich free of mortgage or lien, valued by plaintiff's appraiser at $310,000. It is located in the Pemberwick neighborhood. The court accepts the valuation as the fair market value. (Plaintiff's Exhibit 3B).
The defendant was born in Bosnia and immigrated to the U.S.A. in 1961. She had 7 years of formal education. Although initially represented by counsel, she proceeded pro se at the time of trial which commenced on February 27, 1997. The trial was recessed and the court directed the plaintiff to obtain the services of a Bosnian interpreter to assist the defendant in her native tongue. Although the defendant had good oral command of the English language, she professed some difficulty with the plaintiff's exhibits, particularly the trust agreement and the Connecticut Succession Tax Return Form S-1 (Plaintiff's Exhibit #6). The services of a neutral interpreter was obtained by the plaintiff's counsel and he attended and assisted the defendant at subsequent hearings until the court took the papers on April 24, 1997.
For her part the defendant subsidized the plaintiff by paying many of his expenses. She paid several months of the car loan on his 1987 Escort (Defendant's Exhibit D). She paid pharmacy bills for the plaintiff and his two children, (Defendant's Exhibit B), his separate telephone line, (Defendant's Exhibit C), and his auto expenses, (Defendant's Exhibits E F). The plaintiff was also subsidized by his parents.
The marriage difficulties began when the plaintiff was hospitalized at Silver Hill in the Spring of 1991. The plaintiff appeared to have a fragile emotional state during the trial. The defendant is a forceful individual. This is demonstrated by the fact that she ran the family finances and paid the bills during the marriage. The plaintiff's claim that the defendant was verbally abusive to him is given some credence by the court, confirmed by the demeanor of the parties during the trial. CT Page 6133
The court concludes that the causes of the marriage breakdown must be borne by both parties. The parties stipulated that their marriage is irretrievably broken down.
The plaintiff's financial future has been assured by the planning of his mother, coupled with his SSI income. The defendant lists no vested pension and no evidence was elicited concerning the status of her pension rights, if any. The defendant is currently working two days weekly, earning $225. The court finds that the defendant's ability to acquire assets in the future is very uncertain.
The plaintiff amended his financial affidavit to list several medical bills received from his former wife for services rendered their children, (Plaintiff's Exhibit #7 through #16). None of these items appear to be net after submission to the plaintiff's carrier, Aetna. The court, therefore, gives little weight to such alleged obligations. The children are also beneficiaries of the Lois E. Kraft Trust and "health" is explicitly mentioned.
The plaintiff introduced several overdue auto taxes due the Town of Greenwich, one of which bears both parties' names for the 1995 grand list taxing a 1993 Ford Escort possessed by the defendant, listed on her affidavit and not listed by the plaintiff. The other bills are in the defendant's name alone, (Plaintiff's Exhibit #4).
Having reviewed the evidence, assessed the parties' credibility, all in light of *46b-81 and *46b-82, as well as relevant case law, the court enters the following decree.
1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown, all of the allegations of the complaint having been found proven.
2. Periodic alimony of $100.00 weekly is ordered paid to the defendant by the plaintiff until the death of either party, the defendant's remarriage, further court order, or June 1, 1999 which term limitation shall be non-modifiable regardless of any change in circumstances (cf. Rau v. Rau, 37 Conn. App. 209) (1995).
3. The defendant is awarded 50% of the plaintiff's pension. The attorney for the plaintiff is directed to prepare the QDRO for the court's signature. CT Page 6134
4. The plaintiff is ordered to pay to the defendant the sum of $5,000 as lump sum alimony, due on July 1, 1997.
5. The defendant, if entitled to COBRA benefits, shall bear the premium expense. The plaintiff shall do nothing to adversely affect her rights.
6. The defendant shall be solely responsible for the delinquent tax bills and shall pay the 1995 list year bill due on the 1993 Ford Escort by June 15, 1997. The plaintiff shall sign any documents necessary to remove his name from the title to said auto and the defendant is directed to remove his name, if not already done, by July 1, 1997, by registering the vehicle in her name.
7. Each party shall otherwise have sole ownership of the respective assets each now owns or possesses, free of any claim by the other party.
8. The expenses incurred for services of the Bosnian interpreter shall be borne solely by the plaintiff.
9. Each party shall be solely responsible for the respective bills or liabilities each has incurred.
The attorney for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.