[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties, John O'Bryan (Plaintiff) and Janet O'Bryan (Defendant), entered into a separation agreement on October 18, 1991. The marriage was dissolved on January 3, 1992 and the agreement was incorporated into the judgment. The parties were awarded joint legal custody of the two children, Lucas O'Bryan born February 25, 1979 and Caley O'Bryan born June 22, 1985. Primary residence of the children was with the Defendant mother.
The separation agreement of the parties signed on October 18, 1991 provides the following language regarding amendments to the agreement:
1. In the event any [dissolution] action is instituted or prosecuted, the parties shall be bound by all the terms of this agreement. (Article III, § 1, p. 4.)
2. In the event that a decree dissolving the marriage of the parties hereto, or a decree of divorce between the parties hereto, shall be entered in any court of competent jurisdiction,a subsequent modification by any court of competent jurisdictionof such decree shall, to the extent that it varies the terms ofthis agreement be deemed to amend this agreement in accordanceCT Page 4111with the terms of such modification." (Emphasis added.) (Article III, § 2, p. 4.)
Lucas O'Bryan, presently age 21, moved out of his mother's residence on September 9, 1999. The Plaintiff father filed a motion to modify in which he sought to redirect the child support ordered for the benefit of the two children so that both children would benefit equally. The Plaintiff was not seeking to modify the amount of support but wanted to make payment for the support of Lucas directly to him because the support being paid to the Defendant mother was not being passed on to Lucas and was being used strictly to support to the minor child Caley. On February 14, 2000, the Defendant also moved for a modification of child support.
The pertinent portion of the child support award provided for post majority support for Lucas until the age of 27 and Caley until the age of 21 as follows:
All of 2000 $1666
All of 2001 $1250
All of 2002 $2083
All of 2003 $2083
All of 2004 $1666
All of 2005 $1666
All of 2006 $1666
[T]he court is authorized to incorporate an agreement by reference into its dissolution judgment. See General Statutes § 46b-66. A judgment rendered in accordance with such a stipulation of the parties [which occurred in the O'Bryan case] is to be regarded and construed as a contract. Barnard v.Barnard, 214 Conn. 99, 109, 570 A.2d 690 (1990). Thus, . . . resolution of the . . . claim is guided by the principles that govern the construction of contracts.
A contract is to be construed as a whole and all relevant provisions will be considered together. . . . In giving meaning to the terms of a contract, we have said that a contract must be CT Page 4112 construed to effectuate the intent of the contracting parties. . . . The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . (Citations omitted; internal quotation marks omitted.) Id., 109-10. Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. (Internal quotation marks omitted.) Levine v. Massey,232 Conn. 272, 279, 654 A.2d 737 (1995)." (Internal quotation marks omitted.) Tremaine v. Tremaine, 235 Conn. 45, 56-7, 663 A.2d 387
(1995).
One proposal suggested was to use the current child support guidelines in establishing what the father should pay to the mother monthly as child support. In other words, the court should modify the amount of child support in keeping with current guidelines at a minimum of the highest income rate of the guidelines. The court notes that this case is not a guideline's case because the joint net income of the parties, according to their financial affidavits, is approximately $3393 per week. The highest net weekly income level in the schedule is $2500, which is what the mother is seeking to utilize as the minimum that should be considered. The court, however, may deviate from the guidelines. "[C]ourts remain free to fashion support awards on a case-by-case basis, provided the amount of support prescribed at the $2,500 level is presumed to be the minimum that should be ordered in such cases." (Emphasis added.) Child Support and Arrearage Guidelines, Preamble, § (d)(7), p. iii. The court, therefore, will deviate from the guidelines by increasing the current support amount by twenty percent (20%) and dividing that in half. In so doing, both children will still receive support, with half payable to the Defendant mother and the other half payable directly to Lucas until the dates originally agreed upon by the parties. CT Page 4113
In the present case the court finds that deviation from the guidelines is necessary and authorized by Section46b-215a-3(b)(5) and (6). "In some cases, child support is considered in conjunction with a determination of total family support, property settlement, and tax implications. When such considerations will not result in a lesser economic benefit to the child, it may be appropriate to deviate from presumptive support amounts for the following reasons: (A) division of assets and liabilities, (B) provision of alimony, and (C) tax planning considerations." Regs., Conn. State Agencies § 46b-215a-3(b)(5). According to the dissolution, the defendant wife was awarded alimony starting with $3333 per month for the last two months of 1991 and subsequently decreasing amounts with current alimony for the year 2000 set at $1666 per month and 2001 set at $1666 per month. Alimony will cease on January 1, 2002. (Separation Agreement, Article VI, pp. 12-3.) The defendant was also awarded two of the three parcels of land owned by the parties and was given the tax benefit of claiming the two children as dependents. (Separation Agreement, Article XIII, p. 22 and Article V, p. 11.) Additionally, the court may deviate from the guidelines when it is in the "[b]est interests of the child." Regs. Conn. State Agency § 46b-215a-3(b)(6). It is in the best interest of both children to implement this increase in the amount of their support.
As stated above, there is only one child presently living in the mother's household. The father, however, is still responsible for supporting both children in keeping with the agreement until December 31, 2006. The court finds that there is a substantial change in circumstance in this case because there is only one child remaining in the mother's household and because the Plaintiff's income is significantly higher than it was on the date of the dissolution. It would be inequitable and inappropriate to adhere to the guidelines under the circumstances presented in this situation. The court orders the Plaintiff to pay the Defendant as child support for Caley the following sums monthly for the time frame indicated (the Plaintiff may, at his election, pay half of said sum on the first of each month and half on the fifteenth of each month):
From January 31, 2000 through March 13, 2000 $ 833[1]
The remainder of 2000 $1000
All of 2001 $ 750 CT Page 4114
All of 2002 $1250
All of 2003 $1250
All of 2004 $1000
All of 2005 $1000
All of 2006 $1000
Furthermore, the father shall pay to the son, Lucas, the following sums monthly as and for support for the time frame indicated (the father may, at his election, pay half of said sum on the first of each month and half on the fifteenth of each month):
From January 31, 2000 through March 13, 2000 $ 833[2]
The remainder of 2000 $1000
All of 2001 $ 750
All of 2002 $1250
All of 2003 $1250
All of 2004 $1000
All of 2005 $1000
All of 2006 $1000
The court orders the Plaintiff to send documentation of the payments to Lucas in the form of copies of canceled checks to the court on a quarterly basis.
The above findings and orders are in keeping with the intent of the parties' agreement which was to pay child support for each of the children, even beyond the age of majority. The court finds it hard to believe that either parent expected both children to remain in the home beyond the age of majority for several reasons, not the least of which would be that they made provision for allocation of payment of college expenses in Article XI.
The above orders are to take effect as of the date of January CT Page 4115 31, 2000
HILLER, J.